OMEGA CHEMICAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52557.    Promulgated January 24, 1935.

*Mark Eisner, Esq.*, and *F. Tannenbaum, Esq.*, for the petitioner. *Warren F. Wattles, Esq.*, for the respondent.

## OPINION.

MORRIS: The fundamental inquiry is whether there are two separate and distinct credits provided for in section 238 of the Revenue Acts of 1924 and 1926 to be computed and determined according to

their separate limitations as therein prescribed, that is, a credit under subdivision (a) for any income, war profits, and excess profits taxes paid in the instant case to the Republic of France and to the Kingdom of Great Britain, the amount thereof being limited by the provisions of that subdivision, and another credit under subdivision (e) of that section for such income, war profits, or excess profits taxes " deemed " to have been paid by the petitioner's foreign subsidiaries to those countries upon accumulated profits from which dividends were declared and received by this petitioner, said credit to be separately computed and limited only by the provisions of that subdivision, and the sum of the two to be allowed as credits against the income taxes found to be due the United States, as the petitioner contends, or, whether the total allowance in any event is governed by the limitation prescribed in subdivision (a) of that section, as the respondent contends.

The pertinent provisions of the Acts of 1924 and 1926, which are the same for our purposes, are as follows:

SEC. 238. (a) In the case of a domestic corporation the tax imposed by this title shall be credited with the amount of any income, war-profits, and excess-profits taxes paid or accrued during the same taxable year to any foreign country, or to any possession of the United States: *Provided,* That the amount of such credit shall in no case exceed the same proportion of the tax (computed on the basis of the taxpayer's net income without the deduction of any income, war-profits, or excess-profits taxes imposed by any foreign country or possession of the United States), against which such credit is taken, which the taxpayer's net income (computed without the deduction of any such income, war-profits, or excess-profits tax) from sources without the United States bears to its entire net income (computed without such deduction) for the same taxable year. * * *

    \*       \*       \*       \*       \*       \*       \*

(e) For the purposes of this section a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends (not deductible under section 234) in any taxable year shall be deemed to have paid the same proportion of any income, war-profits, or excess-profits taxes paid by such foreign corporation to any foreign country or to any possession of the United States, upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits: *Provided,* That the credit allowed to any domestic corporation under this subdivision shall in no case exceed the same proportion of the taxes against which it is credited, which the amount of such dividends bears to the amount of the entire net income of the domestic corporation in which such dividends are included. * * *

Prior to the enactment of the Revenue Act of 1918 a taxpayer who had paid income, war profits, and excess profits taxes to a foreign country was only permitted to deduct such taxes from gross income in arriving at the net income upon which the United States income tax was imposed. The Congress, recognizing the manifest

unfairness in the prevailing method of treatment and in order to mitigate the evils of double taxation, provided, in section 238 of that act, for an unlimited credit for taxes paid to such foreign countries or possessions of the United States against taxes found to be due the United States. Rept. 767, p. 31, accompanying H. R. 12863. See also *Burnet* v. *Chicago Portrait Co.*, 50 Fed. (2d) 683; affd., 285 U. S. 1. Thus, we see that subdivision (a) of section 238 of the acts under consideration originated with the enactment of the Revenue Act of 1918, when the complexities of income taxation were little appreciated, particularly as it pertained to those corporations enjoying an affiliated status and entitled to file consolidated returns under the acts. So that it was not at all surprising that the Congress, in the enactment of the Revenue Act of 1921, should find it necessary to place a limitation upon the credit theretofore allowed. This it did by inserting a limitation clause in section 238 (a) of the Revenue Act of 1921 and, as so amended, that subdivision was carried into the Revenue Acts of 1924 and 1926 in substantially the same language as there used. Subdivision (e) of section 238 found its origin in section 240 (c) of the Revenue Act of 1918, which section pertained to and provided for the filing of consolidated returns by corporate taxpayers. That subdivision then read as follows:

For the purposes of section 238 a domestic corporation which owns a majority of the voting stock of a foreign corporation shall be deemed to have paid the same proportion of any income, war-profits and excess-profits taxes paid (but not including taxes accrued) by such foreign corporation during the taxable year to any foreign country or to any possession of the United States upon income derived from sources without the United States, which the amount of any dividends (not deductible under section 234) received by such domestic corporation from such foreign corporation during the taxable year bears to the total taxable income of such foreign corporation upon or with respect to which such taxes were paid: *Provided,* That in no such case shall the amount of the credit for such taxes exceed the amount of such dividends (not deductible under section 234) received by such domestic corporation during the taxable year.

That subdivision was likewise modified by the Revenue Act of 1921 and was incorporated in the act as subdivision (e) of section 238, the language of which has remained as therein found.

The right of individual citizens of the United States to claim credits for war profits and excess profits taxes paid to foreign countries or possessions of the United States upon income derived from sources therein was granted in section 222 of the Revenue Act of 1918 and that right has been perpetuated throughout the succeeding revenue acts except that, and an interesting historical parallel exists here between the individual right and the corporate right to such credits, the Congress found it necessary to place a limitation upon

the credit allowed to individuals as it did in that same act in the case of corporations.

In commenting upon section 238 of the Revenue Act of 1921 the Finance Committee, at page 19 of its Report No. 275 accompanying H. R. 8245, said:

Section 238 grants to corporations substantially the same credits for income and profits taxes paid to foreign countries or possessions of the United States as are granted to individuals by section 222.

The limitation clauses in section 238 (a) and section 222 referred to in the foregoing Committee Report are the same in principle.

The foregoing brief, but substantially complete, historical sketch of the subdivisions of the acts now under consideration brings us to consideration of the issue presented and the contentions advanced. Our fundamental guide in this quest is to determine, as far as possible, from the language used, what the intention of the Congress was. *In re Matthews*, 109 Fed. 603.

One thing of which we are certain is that the Congress did not intend to grant full credit in all cases for all taxes paid to foreign countries, by reason of the fact that it placed a definite limitation thereon under the Revenue Act of 1921 after it had doubtless learned that the unlimited credit enjoyed under the Revenue Act of 1918 worked a hardship upon the United States and deprived it of taxes upon substantial incomes derived from sources within the United States. It is believed that the Congress intended to allow only what it regarded as a reasonable credit consistent with the best interests of this Government. Therefore, the language which it added to the 1921 Act must be construed in the direction of limitation of the privilege rather than in the extension thereof.

It must also be borne in mind, in the construction of these acts, that they were designed for the production of revenues to the United States. Credits and exemptions were mere incidents in this design. Therefore, the disputed provisions of the acts must be viewed in such a manner that the production of revenue will result except where the act expressly indicates otherwise. In other words, we must impute to the Congress no intention to permit domestic corporations having foreign affiliates to completely deprive the United States of taxes upon income otherwise taxable, by reason of the fact that foreign countries in which they operate have imposed a heavier tax levy upon income than the tax found to be due the United States upon income derived from its sources, a result that would be accomplished in a vast number of such cases.

It will be observed that subdivision (a) of section 238, *supra*, is mandatory in its terms. It states at the very outset that domestic corporations " shall be credited " with a certain proportion of " any

income, war profits, and excess profits taxes paid or accrued " to any foreign countries or to any possessions of the United States. We find nothing of the sort in subdivision (e), however. In fact, except for that portion of the limitation clause provided in that subdivision where it says " the credit allowed to any domestic corporation under this subdivision ", we find nothing therein even authorizing a credit at all apart from the grant made in subdivision (a). True, subdivision (e) says that a domestic corporation owning the majority of the voting stock of a foreign corporation " shall be deemed to have paid " a certain proportion of income, war profits, or excess profits taxes paid by its foreign subsidiary, but it does not say, as was said in subdivision (a), that the amounts " shall be credited " to the taxpayer. What subdivision (e) does say, and this we believe to be the keynote to its intention, is that " For purposes of this section " it would be so deemed. What is meant by these words? The only logical meaning that may be attached to them, it would seem, in the light of all of the other attendant circumstances, particularly in view of the failure of subdivision (e) to expressly grant a credit under that subdivision, is that it refers to subdivision (a), the only granting clause to be found in section 238. This we believe inescapable.

The petitioner contends that articles 611 and 612 of the regulations promulgated under the Revenue Acts of 1924 and 1926 construed subdivisions (a) and (e) of section 238 of those acts as providing for two separate credits and, in effect, that since that construction has stood without change during the reenactment of the same provisions in the later revenue acts until the respondent, in September 1931, issued T. D. 4324, published at page 256 of C. B. X–2, definitely construing the acts otherwise, full force and effect should be given thereto. The first criticism to be made of this contention is that the articles referred to do not, in our opinion, amount to interpretations, indeed, they amount to little more than a restatement of the terms of the statute. Furthermore, admitting the rule that the construction of an ambiguous statute by those charged with the duty of the execution thereof will be given great weight (*United States* v. *Hill*, 120 U. S. 169), such rule is inapplicable where there is no ambiguity or where the interpretation placed upon it by the executive officers is incorrect. *Swift Co.* v. *United States*, 105 U. S. 691. In this connection it is interesting to note the language of Mr. Chief Justice Hughes in *Burnet* v. *Chicago Portrait Co.*, *supra*, wherein the construction of certain words used in these same two subdivisions of the act was involved. He said:

The present controversy has arisen under the Treasury Regulations adopted with respect to the Revenue Acts of 1918 and 1921 as to credits. The familiar principle is invoked that great weight is attached to the construction consistently given to a statute by the executive department charged with its adminis-

tration. *United States* v. *Jackson*, 280 U. S. 183, 193, 50 S. Ct. 143, 74 L. Ed. 361. But the qualification of that principle is as well established as the principle itself. The court is not bound by an administrative construction, and if that construction is not uniform and consistent, it will be taken into account only to the extent that it is supported by valid reasons. [Citations.] Moreover, ambiguous regulations are of little value in resolving statutory ambiguities. * * *

We are of the opinion, therefore, that the credit provided for in subdivision (e) of section 238, *supra*, is merely an enlargement of the basic credit allowed in subdivision (a) of that section and is not a separate credit as the petitioner contends.

The petitioner contends, in the alternative, that if both of the credits determined under the provisions of subdivisions (a) and (e) are not separately allowed, then the excess should be apportioned between the taxes paid or accrued as defined by subdivision (a) and a credit for taxes deemed to have been paid as defined by subdivision (e) in proportion to their respective amounts and that portion of the disallowed credit which is apportioned to the taxes paid or accrued under subdivision (a) should be allowed as a deduction from gross income under section 234 (a) (3) of the Revenue Acts of 1924 and 1926. We have already had occasion to consider the deductibility of that portion of the excess arising under subdivision (e) of section 238 in *W. M. Ritter Lumber Co.*, 30 B. T. A. 231, where we held that such excess was not deductible. The reasons for the conclusion there reached respecting the excess under subdivision (e) are inapplicable to the excess arising under subdivision (a) of that section and for the reason indicated in that case we are of the opinion that to this extent the petitioner's contentions should be sustained. This conclusion coincides with the respondent's T. D. 4324, *supra*, and with what we understand he is now willing to concede.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*