## F. W. WOOLWORTH CO. v. UNITED STATES.

District Court, S. D. New York.
July 1, 1936.

Tolbert, Ewen & Patterson, of New York City (Ward V. Tolbert and John Ewen, both of New York City, of counsel), for plaintiff.

Lamar Hardy, U. S. Atty., of New York City (Leon E. Spencer, of New York City, of counsel), for the United States.

HULBERT, District Judge.

Plaintiff brings this action pursuant to the provisions of the Tucker Act (28 U. S.C.A. § 41(20), to recover alleged overpayments of income taxes for the years 1922, 1923, 1924, and 1925.

The alleged overpayments arise from two causes: (1) Failure to make sufficient deduction (in 1922 and 1923) for obsolescence of leases; and (2) failure to take sufficient credits for taxes paid to foreign countries.

The second subdivision involves taxes paid by the Canadian subsidiary of the plaintiff (*all* of the stock of which is held by the plaintiff); by the English subsidiary (a majority of whose preference and common stock is held by plaintiff); by the Irish subsidiary (which is a subsidiary of the British company); by the plaintiff to Cuba and, as the plaintiff alleges, by it direct to Great Britain.

In its original tax returns for the years in question, the plaintiff claims deductions *only* for the Canadian tax paid, and used as a basis therefor the amount *paid* in each taxable year.

Subsequently, the books and records of the plaintiff were audited by an agent of the Internal Revenue Department and a copy of his report was mailed to the plaintiff by the commissioner. Using the figures in the report as a basis, the plaintiff filed the claims for refund in 1927. In September, 1928, two of these claims were amended.

Departmental action on these claims was somewhat delayed for reasons not here pertinent, so that it was not until December 6, 1930, that the claims were allowed in part and certificates of overassessment were issued and the remainder of the claims, not thus allowed, were disallowed.

The plaintiff's refund claim under section 238 (a) was allowed as claimed. The claim under section 238 (e) as affecting the Canadian subsidiary was allowed as claimed. The claim under section 238 (e) as affecting the British subsidiary was reduced. The Cuban claim was allowed as claimed. However, the commissioner applied the limit under section 238 (a) as the only limit applicable, and disallowed all sums in excess of that limitation. The amounts of the claims so disallowed or rejected are substantially the ones now in dispute.

The filing of claims for refund with the collector of internal revenue for the Second District of New York, and their rejection by the Commissioner of Internal Revenue so far as affecting the parts now material, is not disputed by the defendant. Indeed, practically all of the facts and, in

particular, all of the amounts involved, have been stipulated, and the parties have agreed that they will further submit the monetary result to conform to the court's decision on the issues presented.

The statutes involved are sections 238 (a) and (e) of the Revenue Act of 1921, 42 Stat. 258 (and the corresponding sections of the Revenue Acts of 1924 and 1926 [43 Stat. 286; 44 Stat. 44] which are substantially the same), which provide as follows:

"Credit for Taxes in Case of Corporations.

"Sec. 238. (a) That in the case of a domestic corporation the tax imposed by this title, plus the war-profits and excess-profits taxes, if any, shall be credited with the amount of any income, war-profits, and excess-profits taxes paid during the same taxable year to any foreign country, or to any possession of the United States: Provided, That the amount of credit taken under this subdivision shall in no case exceed the same proportion of the taxes, against which such credit is taken, which the taxpayer's net income (computed without deduction for any income, war-profits, and excess-profits taxes imposed by any foreign country or possession of the United States) from sources without the United States bears to its entire net income (computed without such deduction) for the same taxable year. In the case of domestic insurance companies subject to the tax imposed by section 243 or 246, the term 'net income,' as used in this subdivision means net income as defined in sections 245 and 246, respectively. * * *

"(e) For the purposes of this section a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends (not deductible under section 234) in any taxable year shall be deemed to have paid the same proportion of any income, war-profits, or excess-profits taxes paid by such foreign corporation to any foreign country or to any possession of the United States, upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits: Provided, That the credit allowed to any domestic corporation under this subdivision shall in no case exceed the same proportion of the taxes against which it is credited, which the amount of such

dividends bears to the amount of the entire net income of the domestic corporation in which such dividends are included. The term 'accumulated profits' when used in this subdivision in reference to a foreign corporation, means the amount of its gains, profits, or income in excess of the income, war-profits, and excess-profits taxes imposed upon or with respect to such profits or income; and the Commissioner with the approval of the Secretary shall have full power to determine from the accumulated profits of what year or years such dividends were paid; treating dividends paid in the first sixty days of any year as having been paid from the accumulated profits of the preceding year or years (unless to his satisfaction shown otherwise), and in other respects treating dividends as having been paid from the most recently accumulated gains, profits, or earnings. In the case of a foreign corporation, the income, war-profits, and excess-profits taxes of which are determined on the basis of an accounting period of less than one year, the word 'year' as used in this subdivision shall be construed to mean such accounting period."

### 1. *Obsolescence of Leases.*

The revenue agent who audited the books and records of the plaintiff for the years 1922 and 1923 found that the taxpayer was entitled to claim deduction for obsolescence of leases for these years in certain specified amounts. This information was transmitted to the plaintiff by letter from the commissioner. When the plaintiff filed its claim for refund for those years, it specifically based its claims on the agent's report and the commissioner's letter and asked for refund of the amount stated "or such greater amount as is legally refundable."

A re-audit by the department showed that the deduction should be for an additional $32,000 for each of those years, making an overassessment of $4,000 for each year, but on December 6, 1930, this item was one of those rejected and the ground for rejection was stated to be "deemed not to be included in a claim timely filed."

As to this item, the sole question now presented is whether or not a taxpayer can recover a greater amount than that specifically stated in the claim for refund. I take it that Electric Storage Battery Co. v. McCaughn (D.C.) 54 F.(2d) 814, affirmed (C.C.A.) 63 F.(2d) 715, is controlling, that he can.

Judge Kirkpatrick said: "Under a claim for refund which specifies a certain amount 'or such greater amount as is legally refundable,' the plaintiff may sue for a larger amount than is set forth in the claim, *provided the entire suit proceeds on the grounds set forth in the claim for refund.* The purpose of the statutory requirement, to give the commissioner full opportunity to reconsider and modify, if he so desires, the rulings of his office, has been accomplished. The exact amount claimed is a matter of little importance." (Italics mine.)

I not only agree with the priniciple there stated, but think it peculiarly applies to the present case. Here, the basis of the claim was not, primarily, the plaintiff's own computation, but was that of the department. Surely, if the re-audit had shown that a *lesser* sum than that claimed was properly deductible, the department would have claimed the benefit of that. Now that the re-audit has shown a *greater* sum to be properly deductible, the same reasoning should apply and the taxpayer should now have the benefit of the re-audited amount. The grounds set forth in the refund claim were sufficiently clear to give the "purpose of the statutory requirement" above referred to, full effect.

The plaintiff is entitled to recover $4,-000 overpayment for each of the years 1922 and 1923 and there will be judgment accordingly.

### ■ 2. Cuban Taxes.

The complaint alleges, and the denial in the answer puts in issue, the right to recover taxes paid by the plaintiff to Cuba for 1924, in the sum of $150.55, and for 1925, in the sum of $10,709.81. Plaintiff claims that it paid this directly to Cuba and claims a credit therefor under section 238 (a). The proof satisfies me that such is the fact and plaintiff will have judgment accordingly.

### ■ 3. Irish Taxes.

Shortly after the organization of the Irish Free State, a corporation was organized under its laws, all of the stock of which was owned by the British subsidiary of the plaintiff. Thus, as to the plaintiff, the Irish company is a subsidiary of a subsidiary.

Section 238 of the Revenue Acts of 1921, 1924, and 1926 clearly relates only to payments made by a taxpayer (e. g., the plaintiff here), or a subsidiary of the taxpayer (e. g., the British company in this case).

Unless the corporate entity of the Irish company is to be disregarded and it is to be considered as the alter ego of the British company, no credit, under section 238, can be allowed for the Irish tax.

The proof on this point was quite voluminous, but it satisfies me that the Irish company is a separate and distinct corporation and that its corporate entity should not be disregarded. Accordingly, I find that the claim for credit for the Irish taxes was properly disallowed and judgment must be entered for the defendant as to that portion of the complaint.

### ■ 4. Canadian Taxes.

A different situation prevails with respect to the Canadian company. A contract between the Canadian company and the plaintiff, its sole stockholder, provided, in part:

"The New York Company agrees to furnish the Canadian Company all goods, wares and merchandise that it may need from time to time in the conduct of its business" * * *.

"The Canadian Company agrees to pay to the New York Company as the purchase price of all such goods, wares and merchandise furnished to the Canadian Company by the New York Company * * * the entire profits realized by the Canadian Company over and above an amount sufficient to pay a dividend of five percent per annum * * *."

During each of the years in question, a resolution was adopted by the board of directors of the Canadian Company in substantially the following form: "Upon motion duly made, seconded and carried it was Resolved that a dividend of five (5%) per cent be paid on the capital stock of the corporation, said dividend to be paid December 31 ——, and the balance of the net earnings for the year —— to be paid to F. W. Woolworth Company, New York, as full payment for operating expenses and commission for the year —— as per contract."

The defendant contends that only the Canadian taxes paid in the sum of $3,750 per year (5 per cent. on the capital stock) should be a credit, since that is the only "dividend" declared. On the other hand, the plaintiff contends that the transfer of the entire net earnings each year was a "dividend" within the meaning of sec-

tion 201 (a) of the Revenue Acts of 1921 and 1924 (42 Stat. 228; 43 Stat. 254), which section provides: "Sec. 201. (a) That the term 'dividend' when used in this title * * * means any distribution made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913."

The plaintiff further contends that the proof shows that the Canadian company has had its own buyers of merchandise in Canada, its own import department, and has made few, if any, purchases from the New York Company during the years 1922–1925. I agree that the proof does so establish, and find that the contract was simply a bookkeeping means of transferring the profits of the Canadian company to the New York Company without formal declaration of dividends.

The only reasonable interpretation of the facts is that the whole transfer was a "dividend" within the meaning of the Revenue Acts of 1921 and 1924, and that the plaintiff is entitled to claim, as a credit, the entire Canadian taxes paid.

It is now agreed by both parties that the proper method of computation of the tax is the amount "accrued" in each taxable year and not the amount "paid" as was originally claimed in the tax return. The judgment entered hereon will so provide.

5. *British Taxes.*

(A) *Corporation Profits Taxes.*

It was conceded on the trial that the corporation profits taxes for the years in question were properly allowable under section 238 (e) and the judgment entered hereon will so provide.

(B) *Dividend Taxes.*

The plaintiff received dividends on its preference shares which had been declared at the rate of 7 per cent. less an amount "appropriate" to the income tax at the rate in effect when the dividends were paid and also received dividends on its common stock which were paid free of all income tax.

It claims that the taxes, in respect to these dividends, although actually paid to the British government by the British company were, both in law and in fact, paid by the plaintiff so as to be a credit under section 238 (a). It cites the English Income Tax Law of 1918 and cases construing it to show that the shareholder is the "taxpayer" and also cites the commissioner's action in so construing section 238 (a) in relation to this plaintiff, as well as other companies.

The defendant, while, of course, not being able to deny that the commissioner has so interpreted the application of the section in question, now contends that the commissioner was wrong and argues that the court is not bound by the former erroneous ruling. Robillard v. Commissioner, 20 B.T.A. 685.

The defendant claims that under the British law the British company is the taxpayer and that the credit, if any, should come under section 238 (e).

If this were a matter of first impression, I would entirely agree with the defendant's viewpoint. But subdivision (a) of section 238 says: "That in the case of a domestic corporation the tax * * * shall be credited with the amount of any income * * * taxes *paid* * * * *to any foreign country*" (italics mine), and subdivision (e) of the same section, says: "For the purposes of this section a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends * * * *shall be deemed to have paid* the same proportion of any income * * * taxes *paid by such foreign corporation.*"

It would seem that the primary meaning and interpretation of these two subdivisions of the one section could square only with a *direct* payment by the taxpayer under the former and an *indirect* payment by the taxpayer under the latter. Certainly, the so-called dividend tax in the present case was not a direct payment by the plaintiff but, at the most, it could be considered as a payment "deemed to have been made" for which section 238 (a) makes no provision.

Passing for a moment the common meaning of the words used, and looking to the interpretation of the English courts, it is clear to me that the company and not the shareholder is the taxpayer. Commissioner of Inland Revenue v. Dalgety & Co., Ltd. (1930) 15 T.C. 216; Neumann v. Commissioner of Inland Revenue (1934) 150 L.T.R. 481; Commissioner of Inland Revenue v. Blott [H.L.1921] 2 A.C. 171; Bradbury v. English Sewing Cotton Co., Ltd., [1922] 2 K.B. 569; Rex v. Purdie, [1914] 2 K.B. 112.

The authorities cited by the defendant: Samuel v. Commissioners, 2 K.B. 53;

Ashton Gas Co. v. Attorney General, [1906] 1 A.C. 10; Goldfields American Development Co. v. Consolidated Goldfields of South Africa, Ltd., [1926] 1 Ch. Div. 338, apply more rigidly to the application of a supertax and the methods of relief for taxpayers in lower brackets who are provided for in the British tax system.

However, the evidence shows that the commissioner has allowed the "dividend" taxes for this very plaintiff for at least the years 1917, 1918, 1919, 1920, 1921, and 1926 and the refunds already made for the years in suit were based on allowance of this claim in the amounts sought. There are also authorities, some interpretative and some judicial, which approve such construction [I.T. 2401, C.B. VII–1, 1928, p. 126; Robillard v. Commissioner, supra; United Dyewood Corp. v. Bowers (D.C.) 44 F.(2d) 399, affirmed (C.C.A.) 56 F. (2d) 603], and the defendant can cite no authority to the contrary.

Again, repeating that I do not believe this allowance a proper one, I do not feel that I can disregard both the authorities and the continued action of the commissioner and substitute for them my judgment as the *only reasonable one*. Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051; Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17; 79 L.Ed. 246, 97 A.L.R. 207.

Accordingly, the "dividend" taxes are allowable as credits under section 238 (a) and the judgment entered hereon will so provide.

### ■ (C) *Income Taxes.*

### 1. *Schedule–A Taxes.*

The British Revenue Act of 1918 provided, in part, as follows: "Tax under Schedule (A) shall be charged in respect of the property in all lands, tenements, hereditaments, and heritages in the United Kingdom of every 20 shillings of the annual value thereof."

Taxes assessed under this schedule are, to my mind, nothing more nor less than what we understand as a "land" tax, and certainly do not come within the words or meaning of section 238 (e). The authorities which the plaintiff cites on this point (Charles A. Frueauff v. Commissioner, 30 B.T.A. 449, Herbert Ide Keen v. Commissioner, 6 B.T.A. 275; Id., 15 B.T.A. 1243) do not establish its contention that this is an allowable deduction and, accordingly,

there must be judgment for the defendant as to this item.

### ■ 2. *Schedule D Taxes.*

Following the reasoning applied to the "dividend" tax, the commissioner has ruled (I.T. 2401, C.B. VII–1, 1928, p. 126) that a taxpayer such as the plaintiff may not claim a credit under section 238 (a) and also under section 238 (e) with respect to the tax paid by the subsidiary on the profits which it retains.

As I understand it, the commissioner also rejected this claim because the basis of computation was not sufficiently clear to make it a credit under section 238 (e).

Having agreed with the prior action of the commissioner as to the "dividend" taxes, I feel bound to follow his determination on this point, and accordingly, as to this item, there will be judgment for the defendant.

### 6. *Limits under section 238 (a) and (e).*

■ In his final determination on the refund claims, the commissioner held that the limit imposed by section 238 (a) controlled both section 238 (a) and section 238 (e), and accordingly disallowed all sums in excess of the (a) limit.

Do the words of these two sections logically lead to such a determination? Clearly, they do not. Each is written as if it were a separate section and not a subdivision of the same section, which is understandable since they were derived from separate sections of the Revenue Act of 1918 (section 238 and section 240 (c).

In their limiting clauses, they both use the words "that the credit * * * *under this subdivision.*" (Italics mine.)

The result has been that some corporations have been so benefited by taking credits under both subdivisions that they pay less American taxes than if all of their business was done in this country, and therefore, in effect, are subsidized for doing business abroad. This, certainly, was never intended by the Congress, but the courts are to construe the language used and not, as was so well said in United States v. Felt & Tarrant Mfg. Co., 283 U. S. 269, at page 275, 51 S.Ct. 376, 378, 75 L.Ed. 1025, "read out of the statute the requirement of its words."

It seems to me that the language used in the sections here under consideration is controlling when a very slight change in terminology would have altered the result.

That the result above indicated was not only possible, but was actually happening even as to the present plaintiff, appears from some of the exhibits in evidence which show that at least three members of the staff of the Commissioner of Internal Revenue knew of the situation and recognized that the result could be changed only by an amendment to the law. This, of course, is not binding on the defendant, but it is significant as showing the understanding of that branch of the government which had assisted in preparing the law and was charged with its interpretation in the administration thereof after it had been passed. Significant, too, is the fact that the Revenue Acts of 1924 and 1926 used almost identically the same language and that the Revenue Act of 1928 (section 131, 45 Stat. 829 [26 U.S.C.A. § 131 and note]) expressly limited the credits to the outside limit formerly provided under section 238 (a). The application of the section 238 (a) limit in the present case was in December, 1930.

However, the most important factor in the interpretation of the Treasury Department is form 1118, which was promulgated pursuant to regulations to be used by taxpayers for the years now in question and which, in its summary, provided that the credits claimed under section 238 (a) be listed under VII and the credits claimed under section 238 (e) be listed under VIII and that IX be the total of item VII plus item VIII without any indication that the total be limited. Nor did any instructions on form 1118 so provide.

The defendant relies on the case of Omega Chemical Co. v. Commissioner, 31 B.T.A. 1108, which held that the limitation provided under section 238 (a) applied also to section 238 (e). Even assuming that the facts in that case are applicable to those in the present one, I cannot agree with that conclusion and believe that it is contrary to the plain unequivocal meaning of the words of the section.

Accordingly, in a proper case, credits may be taken under section 238 (a) and section 238 (e) applying their respective limitations, since, by this decision, the plaintiff is entitled to two credits under section 238 (a) (Cuban taxes and "dividend" taxes) and also two under section 238 (e) (Canadian taxes and British corporation profits taxes), I hold that the limitation imposed by each subdivision is applicable only to that subdivision.

Counsel for the plaintiff in their brief have made a point that they should be allowed further credit under section 234 of the tax law (Revenue Act 1921, § 234, as amended by Act Sept. 19, 1922, § 27, 42 Stat. 856; Revenue Act 1924, § 234, 43 Stat. 283; Revenue Act 1926, § 234, 44 Stat. 41) for any excess to which they may be entitled. I am unable to appreciate the force of this contention upon the record before me, but when the judgment is presented setting forth the computations as herein directed, the court will then hear any further argument which counsel may desire to present with respect to the applicability of section 234.