UNITED STATES v. KENT FOOD COR-
PORATION et al.

Nos. 259, 260, Dockets 20970, 20971.

Circuit Court of Appeals, Second Circuit.

June 16, 1948.

John T. Grigsby, Atty., Dept. of Justice, of Washington, D. C. (J. Vincent Keogh, U. S. Atty., and Morris K. Siegel, Asst. U. S. Atty., both of Brooklyn, N. Y., and James B. Goding, Atty., Federal Security Agency, of Washington, D.C., on the brief), for appellant.

David Bergner, of New York City (Bergner & Bergner and Samuel H. Friedman, all of New York City, on the brief), for appellees.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This appeal presents the question whether food condemned as adulterated in interstate commerce under the prohibition of the Federal Food, Drug, and Cosmetic Act, § 304, 21 U.S.C.A. § 334, may be released to the owners for export to another country. The district court, in an endeavor to conserve food available for human consumption and relying upon a provision of the Act exempting food products intended for export, § 801(d), 21 U.S.C.A. § 381(d), held in favor of the claimant owners. The United States has appealed, contending that such action is beyond the court's power.

Here two libels were filed on February 26, 1947, for the seizure and condemnation of two lots of tomato catsup shipped in interstate commerce in November, 1946. Kent Food Corp. claimed the 215 cases involved in the first libel. It also claimed 441 of the 902 cases attached in the second libel, while Clark-Iger Food Products Co., Inc., claimed the remaining 461 cases. Claimants without answering moved "for an order approving a consent" to a decree of condemnation entered on condition that an order be made directing the United States Marshal to release the catsup to the owners and permit them to sell it for export purposes only. The district court accepted the claimants' contention that the catsup was packed for export when it was seized, stating that the adulteration consisted of a high mold count, but that the goods were still fit for human consumption. Accordingly it entered a decree containing first an order of condemnation of the articles to the United States of America and then successive orders providing for their release by the Marshal to the claimants upon the filing of a bond conditioned in appropriate detail for the packing of the articles for export and shipment out of the country, in compliance with the provisions of 21 U.S.C.A. § 381(d) and under the supervision of the Food and Drug Administration of the Federal Security Agency. Thereupon the United States moved for a reargument, pointing out, among other things, that the Kent Food Corp. had actually been selling the adulterated articles for domestic consumption. The court granted the reargument and it adhered to its original ruling, even though it now found "that the claimants did not intend to export the goods, but planned to dispose of them in the domestic market." It held that it had power in its discretion to permit the export of the goods under proper restrictions and was not required to order them destroyed.

The appeal of the United States is based upon an asserted lack of power of the district court thus to dispose of condemned articles. In supporting its position, the Government also asserts that the court's holding has the effect of destroying the efficacy of the original order of condemnation, since it permits and encourages persons subject to the Act to gamble upon compliance, knowing that the penalty for violation will be only an order for sale in the export trade. The only power of the Government to condemn is statutory, and hence our problem is solely one of statutory construction.

Subdivision (a) of 21 U.S.C.A. § 334 makes liable to condemnation any article of food "that is adulterated or misbranded when introduced into or while in interstate commerce." Subdivision (d) of the same section provides for the disposition of condemned food by "destruction or sale" as the court may direct, with the direction that it shall not be sold contrary to the provisions of the Act or the laws of the jurisdiction in which it is sold, and with the further proviso that, upon the claim-

ants paying the costs and executing a bond conditioned that the article shall not be sold or disposed of contrary to the provisions of the Act or the laws of any state or territory in which sold, "the court may by order direct that such article be delivered to the owner thereof to be destroyed or brought into compliance with the provisions of this chapter under the supervision of an officer or employee duly designated by the Administrator." 21 U.S. C.A. § 342(a) (3) states that a food shall be deemed to be adulterated "(3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food."

In a separate chapter of the Act, dealing with imports and exports, it is provided that a food "intended for export shall not be deemed to be adulterated or misbranded under this chapter if it (1) accords to the specifications of the foreign purchaser, (2) is not in conflict with the laws of the country to which it is intended for export, and (3) is labeled on the outside of the shipping package to show that it is intended for export." 21 U.S.C.A. § 381(d). The section goes on to provide: "But if such article is sold or offered for sale in domestic commerce, this subsection shall not exempt it from any of the provisions of this chapter."

Thus the language of this last section deals with a subject matter entirely apart from that of condemnation under § 334. Here we have the statement of an exemption from the operation of the Act. Sec. 334 deals, however, with the consequences of a violation of the Act by introducing an adulterated article into interstate commerce; and subd. (d) sets forth sanctions and remedies for such violation. Thus the part of the section which deals with release to the owner expressly provides either for destruction of the article or for its being brought into compliance with the provisions of the Act. It is further made clear that the article is not to be sold contrary to the provisions either of the Act or the laws of the jurisdiction in which it is sold. There is no provision for a sanction by way of a delayed exemption for export purposes, such as might have been secured had the articles been originally intended for such purposes. The district court did not consider that these articles were being brought into compliance with the law; indeed, there was no basis for such a view. The court thought it had discretion to resort, even after the articles had been condemned, to the special exemption granted by the statute.

■ In this we think the court was in error. The power specifically given to the court to do only certain things upon condemnation of the articles excludes the possibility of according them a status they might originally have had, had they never been introduced into interstate commerce for the purpose of domestic sale. The clear purpose of the statute appears to be to visit the statutory penalties or sanctions upon articles thus found to be in violation of its provisions. See Hipolite Egg Co. v. United States, 220 U.S. 45, 57, 58, 31 S.Ct. 364, 55 L.Ed. 364; United States v. Dotterweich, 320 U.S. 277, 280, 64 S.Ct. 134, 88 L.Ed. 48. The practical aspects of the situation would seem to support this construction, for there is nowhere disclosed an intention that a violator of the Act may avoid the consequences of his wrong by then exporting the outlawed goods to some foreign country which will receive them. However laudatory may be the purpose to conserve the food supply (perhaps even of a condiment or relish such as catsup), an attempt to rewrite the Act along these lines seems likely to have the effect of nullifying its chief purposes. The several provisions for extensive remedies of not merely seizure and condemnation, § 304, 21 U.S.C.A. § 334, but criminal prosecution and injunction, §§ 301–303, 21 U.S.C.A. §§ 331–333, also suggest the impropriety of the result reached below. Such limited legislative history as is called to our attention is to the same effect.[1]

___

[1] The United States directs attention to congressional committee reports which emphasized the essential similarity of 21 U.S.C.A. § 381(d) with the export exemption provision of the former § 2 of the Food and Drugs Act of 1906, 21 U. S.C.A. § 2, and argues that this imported an approval of the consistent policy, throughout the 32-year life of the Food and Drugs Act, upon the part of

Consequently we think that the provisions of the decree appealed from which go beyond the judgment of condemnation and provide for the release under the stated conditions of the articles to the claimants for export abroad are beyond the power of the court. The libels must be remanded for the elimination of these provisions and for the substitution of provisions appropriate to the condemnation of the articles under 21 U.S.C.A. § 334(d).

Reversed and remanded.

the Administration to resist any attempt to effect the export of condemned food in the adulterated condition which was the basis of its condemnation. It cites United States v. Jackson, 280 U.S. 183, 193, 50 S.Ct. 143, 74 L.Ed. 361, and other cases, to the effect that an administrative interpretation, supported by reenactment of the statute, is entitled to weight in construing the statute.