Mrs. Natividad B. Vda De MISCH, Plaintiff,

v.

ADMINISTRATOR OF VETERANS AFFAIRS, Defendant.

Civ. A. No. 2913–68.

United States District Court District of Columbia.

Sept. 11, 1969.

Monroe Jon Mizel, Kensington, Md., for plaintiff.

David V. Seaman, Civil Division, Department of Justice, Washington, D. C., for defendant.

## MEMORANDUM

WADDY, District Judge.

This is an action in the nature of a mandamus to require the Veterans Administration to resume payment of death compensation to a widow of a veteran of the Spanish American War and to release all funds that have accrued since the termination of those payments. Plaintiff has prayed also that the Court award 10% of the death benefits to her attorney as a fee, notwithstanding the provisions of Sections 3604 and 3605 of Title 38 of the United States Code.

Plaintiff is a citizen of the Philippines. She is the widow of one H. H. Misch, a deceased veteran who had Spanish-American War service from May 2, 1898, to November 1, 1898, and from August 22, 1899, to January 25, 1901. He received pension benefits for the period from April 21, 1924 to the date of his death, April 5, 1928.

Following the death of the veteran, Natividad B. Vda De Misch, plaintiff herein, was recognized as his widow on the basis of proof of their ceremonial marriage in the Philippines on October 31, 1921, and was awarded death benefits under the Act of May 1, 1926, (44 Stat. 382–384, 38 U.S.C. (1952 Ed.) 364a. The award of death benefits was made January 12, 1932, with benefits commencing July 24, 1928, the date of receipt of her application. She received her first pension check during the latter part of March, 1932. Within a day or two thereafter a former landlord of plaintiff informed a Field Representative of the Veterans Administration that plaintiff " * * * was living as a querida of a policeman, Honorio Caguiwa." Thereupon the Veterans Administration instituted an investigation which resulted in the termination of pension benefits as of August 25, 1932. The termination was based upon a decision of the Veterans Administration dated August 16, 1932, to the effect that under the provisions of Section 2 of the Act of August 7, 1882 (22 Stat. 345,

38 U.S.C. 1952 Ed. § 199) she was no longer entitled to benefits because of her "open and notorious adulterous co-habitation." This decision of the Veterans Administration was affirmed by the Administrator's Board of Appeals on July 3, 1933.

With the exception of a period from about 1939 to 1947, which included the period of World War II and the portion thereof when normal communications with the Philippines were interrupted, the plaintiff has from time to time written letters to the Veterans Administration protesting termination of her benefits. The Veterans Administration has at all times adhered to its decision of August 16, 1932 as affirmed July 3, 1933. This action was filed November 22, 1968.

■ The first question to confront the Court is that of the degree of finality to be accorded by this Court to the Veterans Administration determination revoking plaintiff's previously granted benefits, i.e., does the Court have jurisdiction to review the Veterans Administration decision. In Tracy v. Gleason, 126 U.S.App.D.C. 415, 379 F.2d 469 (1967), our Court of Appeals, in construing 38 U.S.C. § 211(a), held that as distinguished from decisions with respect to *claims* for benefits, a decision by the Veterans Administration revoking an *extant right* to benefits was reviewable in the courts. The statutory section construed in Tracy v. Gleason provided:

> "Except as provided in sections 784, 1661, 1761, and as to matters arising under chapter 37 of this title, the decisions of the Administrator on any question of law or fact concerning a claim for benefits or payments under any law administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision."

It is the Government's position that Section 5 of Title I of P.L. 2 of 73rd Congress (3–20–33) [38 U.S.C. § 705

(1952 ed.)] is here applicable rather than the above quoted section, and they contend that, as construed by our Court of Appeals, that section does not recognize a distinction for purposes of reviewability between decisions as to claims for benefits and decisions revoking or refusing to reinstate benefits. To sustain this position the Government cites Hahn v. Gray, 92 U.S.App.D.C. 188, 203 F.2d 625 (1953). The section upon which the Government relies, provides:

> "All decisions rendered by the Administrator of Veterans' Affairs under the provisions of sections 701, 702, 703, 704, 705, 706, 707–710, 712–715, 717, 718, 720, and 721 of this title or the regulations issued pursuant thereto, shall be final and conclusive on all questions of law and fact, and no other official or court of the United States shall have jurisdiction to review by mandamus or otherwise any such decision."

Inasmuch as the administrative action complained of by the plaintiff was made pursuant to Section 2 of the Act of August 7, 1882 (22 Stat. 345, [38 U.S.C. § 199 (1952 ed.)] and, inasmuch as said section is not one of the Sections enumerated in 38 U.S.C. § 705 (1952 ed.), it appears to this Court that the Government's reliance upon 38 U.S.C. § 705 (1952 ed.) is misplaced. Furthermore, Hahn v. Gray does not support the Government's position. Of that case the Court of Appeals said in a footnote to Wellman v. Whittier, 104 U.S.App.D.C. 6 at p. 12, 259 F.2d 163 at p. 169 (1958):

> "Of course a congressional termination of payments is in an entirely different category; cf. 38 U.S.C.A. § 729; and so as to terminations of and reductions in payments pursuant to regulations issued pursuant to statute. Hahn v. Gray, 1953, 92 U.S. App.D.C. 188, 203 F.2d 625, is not to the contrary. There we considered a claim by one who 'was no longer the unremarried widow of a veteran and was properly denied restoration to the pension rolls.' Id., 92 U.S.App.D.C. at page 190, 203 F.2d at page 626.' "

**1156**

This Court also notes that in making the distinction between claims for benefits and actions of the administrator terminating benefits the Court of Appeals in Tracy v. Gleason expressly overruled Hahn v. Gray as to 38 U.S.C. § 211(a). See 126 U.S.App.D.C. 415 at 419, 379 F.2d 469. Accordingly, this Court believes it proper to and will abide by the distinction recognized in Tracy v. Gleason and find jurisdiction to determine whether the action of the Veterans Administration's Board of Appeals in terminating plaintiff's pension was arbitrary and capricious.

As indicated above, the evidence taken from the Veterans Administration file shows that plaintiff received her first pension check during the latter part of March 1932, and that within a day or so of the delivery of this check a former landlord of plaintiff's informed a Field Examiner of the Veterans Administration that plaintiff "was living as the querida of a policeman, Honorio Caguywa (sic)."

An immediate field investigation was launched by the Veterans Administration "to learn the facts" and within the course of this investigation, sworn affidavits, each dated April 4, 1932, were obtained from one Juan Bolotro, one Carlos Aquitania, one Carmen Manaway, one Antonio Padrique and the plaintiff. Each of the affiants (except the plaintiff's) recounted personal observations of the plaintiff living with one Honorio Caguywa (sic) (Caguiwan (sic)). Each affiant further affirmed that by virtue of his living in close proximity to the plaintiff and her alleged "querido", he had overheard matters causing him to conclude that plaintiff and Caguywa (sic) were cohabiting as man and wife.

Plaintiff's affidavit dated April 4, 1932 reflects her being apprised of the identity of her accusers as well as having the affidavits of B. Carmen Manaway, Carlos Aquitania, Juan Bolotro and Antonio Padrique read to her. Plaintiff's affidavit further reflects that she understood the above four affidavits, denied the truth of those affidavits and stated,

"I will never admit anything which happens in my private life, and that is all I have to say." Plaintiff also refused an opportunity to introduce any further testimony and accused her accusers of prevaricating because of personal animosity.

The Court is of the opinion that the Veterans Administration Board of Appeals had before it substantial evidence to support a finding that plaintiff was engaged in open and notorious illicit cohabitation with one Honorio Caguiwa.

Plaintiff argues, however, that the statute does not permit termination of her benefits for "illicit relations" but only for "open and notorious adulterous cohabitation." She says that adultery can only be committed where one of the parties is married, and that the evidence in this case is insufficient to establish that her "querido", if such there was, was a married man.

The only evidence before the Veterans Administration at the time it made its decision terminating plaintiff's benefits to substantiate the proposition that plaintiff's relationship was with a married man was contained in a letter dated April 1, 1932 from one Pedro Rodriguez addressed to

"The Manager, U. S. Veterans Bureau", in Manila, P.I. Rodriguez in said letter stated:

"1. That the said pensioner is douthfull (sic) charater (sic) in the comutily (sic) as proven by the fact that she was seen after times mingling with her (querido) a married man with several children."

■ Whether or not plaintiff's relationship constituted "open and notorious adulterous cohabitation" as required for termination of benefits under 38 U.S.C. § 199 (1952 ed.) is a matter for this Court to determine.

Laws authorizing pension benefits were originally administered by the Bureau of Pensions. As early as 1887 the meaning of the term "open and notorious adulterous cohabitation" was before the Pension Bureau in the case of

Mary E., Widow of Francis Boeke, 1 Pen.Dec. 427. The question was presented and determined in that case in the following language:

"It is apparent that an application of the strict and technical rules of construction, as applied by the courts of our land in the administration of the criminal laws, to this section of the pension laws, would result in a manifest absurdity, and render the law utterly abortive to accomplish the ends sought by Congress in its passage. To hold that the term *adulterous* should be taken in its strict *legal* signification would exclude from the operation of the act the very parties whom it was intended to reach, since *at law* it is impossible for an unmarried person to be guilty of the crime of *adultery*. * * *

"To properly construe the meaning of this law, there is no necessity to depart from the well known rule for construeing (sic) statutes, as laid down and held by all the courts, namely, that, when the meaning of the statute is not obvious on its face and plainly expressed, it must be construed in accordance with the *intent* of the legislature enacting it, and with a view to the accomplishment of the purpose for which it was intended. A review of the whole body of the pension laws enacted by Congress, the remainder of this Act itself, and all the circumstances surrounding its passage, leads the Department to the conclusion that the words 'open and notorious adulterous cohabitation,' used in said act, were intended as *descriptive* merely of acts which would deprive a widow of pension. In other words, Congress intended, and did say, by said Act, that any widow pensioner who was guilty of immoral and licentious acts, *of an open and notorious adulterous character,* should forfeit her pension."

And in the case of Minerva, Widow of Washington C. Beede, 2 Pen.Dec. 119, we find the following at page 121:

"Congress did not intend to deprive soldiers' widows of the governmental bounty when criminally intimate with married persons and to ignore this crime when committed with persons who were not bound by the ties of marriage. The adjudication in this case is not under the criminal law and the phrase is not necessarily confined to the meaning given to the word in criminal decisions and in criminal jurisprudence."

Other decisions of the Pension Bureau to the same effect may be found in 9 Pen.Dec. 327 and 10 Pen.Dec. 286.

In July, 1930, the Bureau of Pensions became a part of the new Veterans Administration.

So far as this Court has been able to ascertain the Veterans Administration has consistently adhered to the construction of the term "open and notorious adulterous cohabitation that was placed upon the statute by the Bureau of Pensions.

In the case of United States v. Jackson, 280 U.S. 183, at page 193, 50 S.Ct. 143, at page 146, 74 L.Ed. 361 the Supreme Court of the United States stated:

"It is a familiar rule of statutory construction that great weight is properly to be given to the construction consistently given to a statute by the Executive Department charged with its administration. United States v. Cercedo Hermanos y Compania, 209 U.S. 337 [28 S.Ct. 532, 52 L.Ed. 821]; Robertson v. Downing, 127 U.S. 607 [8 S.Ct. 1328, 32 L.Ed. 269]; United States v. Healey, 160 U.S. 136 [16 S.Ct. 247, 40 L.Ed. 369]; and such construction is not to be overturned unless clearly wrong, or unless a different construction is plainly required."

This Court, relying upon the established interpretation of Section 199 by the Bureau of Pensions and the Veterans Administration and the above holding of the United States Supreme Court concludes that the language "open and notorious adulterous cohabitation"

contemplated open and notorious illicit cohabitation whether with a married or unmarried person, and that there was substantial evidence before the Veterans Administration Board of Appeals to permit the finding by it that plaintiff was engaged in "open and notorious adulterous cohabitation." Accordingly the action of the Veterans Administrator's Board of Appeals was not arbitrary and capricious.

Inasmuch as death benefits are not being restored to plaintiff, it is unnecessary to consider her prayer for an award of counsel fees.

The Court finds in favor of the defendant and this cause will be dismissed with prejudice. Counsel for the defendant will present an order in accordance herewith.