**SKELTON et al. v. UNITED STATES.**

No. 1398.

Circuit Court of Appeals, Tenth Circuit.

July 21, 1936.

On Rehearing March 2, 1937.

**600**

R. L. Disney, of Oklahoma City, Okl. (Suits & Disney, of Oklahoma City, Okl., and John C. Powell, of Sulphur, Okl., on the brief), for appellants.

Randolph C. Shaw, Sp. Asst. to the Atty. Gen. (C. A. Summers, U. S. Atty., and C. W. Miller, Asst. U. S. Atty., both of Muskogee, Okl., Daniel Dillon, Atty., Bureau of War Risk Litigation, of Oklahoma City, Okl., L. A. Lawlor, Acting Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett and Fendall Marbury, Sp. Assts. to the. Atty. Gen., and Keith L. Seegmiller, Atty., Department of Justice, of Washington, D. C., on the brief), for the United States.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

### McDERMOTT, Circuit Judge.

This war risk insurance case turns upon a difficult question of statutory interpretation. By a statute first passed in 1921 and several times amended, Congress has enacted that term insurance shall not be considered as having lapsed as long as the insured had compensation due him sufficient to pay the premiums. World War Veterans' Act 1924, § 305, as amended, 38 U.S. C.A. § 516. Broadly speaking, term insurance ceased on July 2, 1927, the insured having the right to convert it before that date into some form of regular life insurance with reserve values—generally spoken of as "converted" insurance. Section 301, World War Veterans' Act of June 27, 1924, as amended, 38 U.S.C.A. § 512. Compensation in this case was allowed in 1930 for disabilities existing since discharge; it either must be applied to term insurance or not applied to insurance at all, for concededly it cannot be applied to one of the many types of converted insurance offered by later statutes. Cf. Mikell v. United States (C.C.A.4) 64 F.(2d) 301. Thus is presented the question: Did Congress intend that term insurance should cease in 1927 as to veterans who then had compensation due and unpaid? May such compensation be applied to term insurance until July 2, 1927, only? Did section 301 impliedly repeal section 305 as of July 2, 1927, except where policies had matured prior to that date?

There is little dispute in the testimony. The insured was a potential dementia præcox when he enlisted. He had no manifest symptoms and was passed for service. It is probable that, absent the shock of war service or some other exciting force, he might have gone through life without developing the disease to the point of disablement. He carried on the full duties of a soldier for his four months service on this side, but on the transport the terror of submarines developed the disease; he was locked up in the hatch, and on March 21, 1919, was discharged on a certificate of disability, account dementia præcox with complications. Returning to the quiet life of the farm, he did a man's full work for several consecutive years. He. then broke down and was confined to the asylum in the spring of 1929.[1] His condition is incurable. In 1930 the Veterans Bureau rated him ten per cent disabled from the date of discharge until December 29, 1928. He was permanently and totally disabled on the latter date. The compensation so awarded—$10.- 50 a month—was sufficient to have kept his term insurance alive.

No premiums were paid after September, 1919. If this unpaid compensation is applicable to insurance premiums after July 2, 1927, the record justifies—probably compels—a finding of permanent and total dis-

---

[1] The trial court denied recovery on the ground that insured was disabled when he entered the service. The evidence conclusively shows he was not permanently and totally disabled when he enlisted nor for several years afterward. His work record for at least seven years after discharge refutes any finding of permanent and total disability during that period. United States v. Perkins (C.C.A. 10) 64 F.(2d) 243. Appellant concedes in the briefs that permanent and total disability did not exist in 1919 or for several years thereafter, and appellee does not undertake to sustain the judgment on this ground.

ability prior to 1930 when compensation was awarded back to the date of discharge.

■ Appellant argues that if section 301 is construed to repeal the right to have unpaid compensation applied to insurance premiums, it deprives insured of a vested right and is unconstitutional under the doctrine announced in Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434.[2] We do not agree. When this policy was issued in 1918, there was no right to have premiums paid with uncollected compensation. That privilege was accorded by later statutes, and can be withdrawn without disturbing vested contractual rights. Again, there is no vested right in compensation; since the right to compensation in any form may be withdrawn at the will of Congress, a fortiori the right to apply unpaid compensation in a particular way may be withdrawn.

■ We thus come squarely to a question of congressional intent which is freighted with doubt. The Act of June 7, 1924, § 301, as amended (38 U.S.C.A. § 512), provides that "all yearly renewable term insurance shall cease on July 2, 1927," except when it had ripened into a claim before that date, or where mental disability or disappearance prevented conversion into regular life insurance. If this were the only pertinent statute, the answer would be clear: Congress having engrafted two exceptions onto the statute, the courts are not warranted in engrafting a third. But this is not the only pertinent statute, and in ascertaining the intent of Congress, the statutory plan should be viewed as a whole.

Soon after the close of the War the attention of Congress was directed to the proposition that many veterans who were entitled to compensation were unable to keep up their insurance; if compensation authorized by Congress had been paid when due, they would not have been forced to lapse their insurance. Accordingly section 27 of the Act of August 9, 1921, 42 Stat. 152, 156, provided that if a veteran, who was entitled to enough unpaid compensation to pay his premiums, died while his insurance was lapsed, his insurance should not be considered as having lapsed. That statute was broadened by the Act of March 4, 1923, 42 Stat. 1521, and again by the Act of June 7, 1924, and now applies to all veterans whose policies lapsed prior to June 7,

1924, and who "dies or has died, or becomes or has become permanently and totally disabled," and who at the time of death or permanent and total disability was or is entitled to compensation remaining uncollected—that then so much of his insurance as his compensation would pay for should not be considered as lapsed. This section in terms covers this case unless it lost its force on July 2, 1927, when term insurance ceased.

Throwing some light on the question is the fact that this section has been amended since July 2, 1927. On May 29, 1928, Congress provided that compensation uncollectible by reason of provisions limiting the amount of back pay, should nevertheless be considered uncollected compensation for the purposes of this section. That is, while a veteran allowed compensation for disability since discharge could not be paid in cash except for a limited period, nevertheless back pay should be applied on his insurance without any limitation as to time. 45 Stat. 971 (38 U.S.C.A. § 516). Appellee explains this amendment by saying that it was passed to protect those insureds who had become permanently and totally disabled prior to July 2, 1927; to which appellant replies that such claims had become vested and needed no such amendment for their protection. Neither the argument nor reply is conclusive. The 1928 amendment commences thus: "That section 305 of the World War Veterans' Act, 1924, as amended * * * is amended," etc. 45 Stat. 971, § 17. This phrasing is some indication that Congress did not think that section 305 had spent its force.

In the Economy Act of 1933 there is a proviso in section 17, 38 U.S.C.A. § 717, which refers to "contracts of yearly renewable term insurance which have matured prior to March 20, 1933." If appellee is correct, no term insurance could mature after July 2, 1927, except in the rare instance of disappearance or mental incompetency. It seems to be a reasonable conclusion that Congress, in these two enactments since 1927, had in mind that the right to apply compensation to insurance premiums did not cease on July 2, 1927.

The reasoning which with us has tipped the scales so balanced with doubt is this: By statutes enacted from 1921 to 1928, Congress has made clear its general intent that

[2] Appellant states that Wilner v. United States, decided with the Lynch Case, is squarely in point in that there the insured died after 1927. But counsel overlook the fact that the policy matured by permanent and total disability in 1919.

a veteran should not lose his insurance rights because the government was derelict in paying him compensation it owed. Appellee's argument runs counter to that clear intent. One veteran to whom compensation was paid when due before 1927 keeps his insurance alive and could thus convert on July 2, 1927; another, entitled to compensation prior to 1927 but not receiving it, is forced to lapse his term insurance before July 2, 1927, and on that date has nothing to convert. One has his converted insurance and the other does not, just because the government was derelict in paying compensation when due. The veteran thus loses his right to convert because of the neglect of the government. The right to convert is one of the most valuable features of term insurance—both in dollars and cents and because the veteran might be unable to procure insurance elsewhere. We do not believe Congress intended to depart from its settled policy and discriminate against the veteran whom the government had neglected to pay on time.

If this construction be erroneous, appellant then urges that his case falls within the clause in the Act of June 2, 1926, 38 U.S.C.A. § 512, which provides that the director may extend the time for continuing and converting term insurance where conversion on July 2, 1927, is "impracticable or impossible due to the mental condition or disappearance of the insured," and Reg. 77, § 4050(c), which provides that term insurance shall not lapse in the case of a mental incompetent without a legal guardian. The regulation further provides that such waiver shall be automatic and retroactive.

This contention is bottomed upon the assumption that insured was mentally incompetent on or before July 2, 1927. We are not a trial court and cannot make such a finding of fact. Upon the new trial, the facts and law of this contention may be explored if appellant is so advised.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

## On Rehearing.

Before PHILLIPS and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

The question which this case presents is whether disability compensation awarded in 1930 for a disability existing since discharge in 1919 can effect continuation or revival of a contract of renewable war risk insurance after July 2, 1927. It was observed at the threshold of our former opinion that the question is a difficult one which must be resolved by interpretation of certain statutory provisions. Sections 301 and 305 of the World War Veterans' Act of 1924, as amended, are the provisions involved.

Taking up the history of section 301, war risk insurance was authorized by the Act of October 6, 1917. 40 Stat. 398. Section 404 provided that such insurance should be term insurance for successive terms of one year each, and that not later than five years after the date of the termination of the war, it should be converted into such other form or forms of insurance as should be prescribed by regulations and as the insured should request. It then directed the promulgation of regulations for the right to convert into ordinary life, twenty-payment life, endowment maturing at the age of sixty-two, and other usual forms of insurance. The amendment of 1921 re-enacted the provisions in respect to conversion and added that where an insured whose renewable insurance had matured through total and permanent disability was found and declared to be no longer disabled in that manner and where the contingency was extended beyond the five-year period during which such insurance must otherwise have been converted, he should have two years from the date on which renewed payment of premiums was required within which to make conversion. 42 Stat. 147, 155. Then came section 301 in 1924. It provided that all term insurance should be converted not later than July 2, 1926; and that it should cease on that date, except where death or total and permanent disability should have previously occurred. Like provision was made for conversion within two years after renewed payment of premiums was exacted upon a finding that the insured was no longer totally and permanently disabled. 43 Stat. 607 (624). The section was amended in 1926. 44 Stat. 686, 38 U.S.C.A. § 512. The amendment deferred the termination of such insurance to July 2, 1927, and provided that it should cease on that date, except when death or total and permanent disability had occurred prior thereto. It contained a proviso that the director could by regulation extend the time for conver-

sion if the mental condition or disappearance of the insured on July 2, 1927, made conversion impracticable or impossible on that date.

Turning now to the history of section 305, the Act of August 9, 1921, added section 408 to the War Risk Insurance Act. It provided that where a soldier had theretofore allowed his insurance to lapse while suffering from wounds or disease suffered or contracted in line of service, and at the time of such lapse he was entitled to compensation on account thereof in a sum equal to or in excess of the amount due as premiums, and had since died from such wounds or disease without collecting such compensation, the policy should not be deemed to have lapsed; and payment was authorized less a deduction for premiums and interest. 42 Stat. 147 (156). The section was amended two years later to provide that where a soldier had allowed his insurance to lapse in such circumstances and dies or has died from such wounds or disease, or becomes or has become totally and permanently disabled by reason thereof, without collecting such compensation, the policy should be deemed to continue in force and be paid in like manner. 42 Stat. 1521 (1525). Section 305 followed in 1924. It provided that where a person had theretofore allowed his insurance to lapse while suffering from a compensable disability for which compensation had not been collected and dies or has died, or becomes or has become totally and permanently disabled and at the time of such death or disability was entitled to uncollected compensation, so much of his insurance as such uncollected compensation would purchase if applied to premiums when due, shall not be considered as lapsed. Payment was authorized for such insurance, less premiums and interest. 43 Stat. 607 (626). The section was amended in 1926. The amendment provided that where a person had allowed his insurance to lapse, or has canceled or reduced all or any part of it while suffering from a compensable disability for which compensation was due and dies or has died or becomes or has become totally and permanently disabled and at the time of such death or disability was entitled to uncollected compensation, then so much of his insurance as such compensation would purchase if applied to payment of premiums when due, shall not be considered as having lapsed or been canceled or reduced in amount. It contained a proviso that insurance thereafter revived under its provisions shall be paid only to the insured or certain named relatives. 44 Stat. 790 (799); 38 U.S.C.A. § 516. A further provision was added to the section in 1928. It provided that compensation, uncollectible under certain provisions of law, shall be considered as compensation for the purposes of section 305. 45 Stat. 964 (971), 38 U.S.C.A. § 516.

█ █ It is apparent that from the outset term insurance was regarded as temporary, and that it should be converted into other forms. Section 301 deals specifically and exclusively with insurance of that kind and provides in unyielding language that it should cease on July 2, 1927, unless death or total and permanent disability intervened prior to that date. The director was authorized to extend the time where conversion on that date was impracticable or impossible on account of the mental incapacity or absence of the insured, but there is no suggestion that such an extension was made in this instance. No effort was made on the trial to show that the insured came within the exception, and for that reason it is without moment on this appeal.

It is equally apparent that section 305 is a general provision which deals with various forms of insurance and has for its purpose the prevention of lapse if there is disability compensation presently due the insured, sufficient in amount to pay the premiums. As originally enacted it was confined to the lapsation of a policy; but in 1926 it was broadened to include cancellation or reduction; and in 1928 it was further broadened to include compensation which was uncollectible under other provisions. Term insurance was not specifically mentioned in the original section or in any of the amendments to it.

Thus one section relates specifically and exclusively to term insurance and provides that it should cease on July 2, 1927; and another section provides in general language that so much of an insurance policy shall not be deemed to have lapsed or been canceled or reduced as the existing unpaid disability compensation would purchase if applied to the payment of premiums. It is a familiar rule that different statutory or constitutional provisions shall be construed together and given harmonious effect if that can be done without violating the plain language used or the clear legislative in-

tent. But where a general provision and a specific provision cannot be reconciled, the former yields to the latter. That doctrine applies here, because there is nothing in the general section (305) which argues persuasively that Congress intended to neutralize or overcome the clear provision in the specific section (301) that term insurance should expire on July 2, 1927, except where matured prior to that date by the intervention of death or total and permanent disability. Significance must be given to the fact that when section 305 was amended in 1926 to include canceled or reduced insurance and when it was further amended in 1928 to include compensation which could not be collected under other sections, no reference was expressly made to term insurance. It must be assumed that if Congress intended or desired to extend such insurance beyond the date fixed for its termination, appropriate language would have been employed to evidence such purpose.

■■ Further, it is now called to our attention that since February, 1928, the Veterans' Administration and its predecessor, the Veterans' Bureau, have steadfastly and consistently construed the two statutes to mean that term insurance ceased on July 2, 1927; and that an award of compensation did not continue it beyond that date, or revive it. Claims have been adjudicated accordingly. That construction is entitled to great weight and should not be overthrown unless cogent reasons lead to the conclusion that it is clearly wrong. United States v. Jackson, 280 U.S. 183, 50 S.Ct. 143, 74 L.Ed. 361; Taylor v. Tayrien (C. C.A.) 51 F.(2d) 884; City of Tulsa v. Southwestern Bell Telephone Co. (C.C.A.) 75 F.(2d) 343; City of Roswell v. Mountain States Telephone & Tel. Co. (C.C.A.) 78 F.(2d) 379; Globe Indemnity Co. v. Bruce (C.C.A.) 81 F.(2d) 143. And Congress has convened repeatedly during the time the two sections have been thus construed and administered without expressing its disapproval. That silence must be regarded as acquiescence. United States v. Midwest Oil Co., 236 U.S. 459, 35 S.Ct. 309, 59 L.Ed. 673; Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796; Pleasant v. Missouri-Kansas-Texas R. Co. (C.C.A.) 66 F.(2d) 842, certiorari denied 291 U.S. 659, 54 S.Ct. 376, 78 L.Ed. 1051; Commissioner v. McKinney (C.C.A.) 87 F.(2d) 811.

■ We are not unmindful of the fact that section 17, title II, of the Economy Act, approved March 20, 1933 (48 Stat. 11; 38 U.S.C.A. § 717), expressly repealed all laws relating to renewable term insurance and further provided that nothing contained therein should interfere with payments theretofore made or thereafter to be made under such insurance which had matured prior to the effective date of the act or on any judgment previously rendered in a suit on such insurance. It cannot be said, however, that the repeal of all laws relating to term insurance with preservation of rights to payments theretofore made or thereafter to be made under policies which had matured at any time prior to the effective date of the act, without indicating an understanding that some policies had matured intermediate July 2, 1927, and March 20, 1933, can be construed as a controlling declaration that an award of compensation could continue such a policy or revive it after the date definitely fixed for its termination in 1927.

■ The award of compensation made in 1930 did not prevent lapse of the policy or revive it. Whether it was matured by the intervention of total and permanent disability prior to July 2, 1927, was not an issue on the trial below. We, therefore, cannot consider it.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views expressed herein.*

* McDERMOTT, Circuit Judge, joined in granting rehearing, but died before this opinion was prepared.