372

## UNITED STATES v. WEAVER.

### No. 4110.

Circuit Court of Appeals, Fourth Circuit.

Nov. 9, 1936.

Fendall Marbury, Sp. Asst. to the Atty. Gen. (Claud N. Sapp, U. S. Atty., of Columbia, S. C., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to the Atty. Gen., and Thomas E. Walsh, of Washington, D. C., Atty., Department of Justice, on the brief), for the United States.

Warren E. Miller, of Washington, D. C. (R. K. Wise, of Columbia, S.C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The sole question presented upon this appeal is whether section 305 of the World War Veterans' Act 1924, as amended, 38 U.S.C.A. § 516, 1935, Cumulative Supplement, was repealed by section 17 of the Economy Act of March 20, 1933, 38 U.S.C.A. § 717. The plaintiff in the Dis-

trict Court set up two causes of action: (1) A claim of total and permanent disability at the time of his discharge from the military service on April 3, 1919, during the life of a war risk insurance contract for $10,000 in force throughout the month of April, 1919, through the payment of premiums deducted from his pay while in the army; and (2) failing a determination of total and permanent disability in April, 1919, a claim that the policy was revived by virtue of section 305 of the World War Veterans' Act because the veteran subsequently became totally and permanently disabled at a time when there was due him uncollected compensation for the period following his discharge, sufficient in amount, if applied to the payment of the premiums on the policy as they became due, to have kept it alive until it matured by reason of his total and permanent disability.

It appears to be conceded that upon the trial of the case before the jury in the District Court, the evidence showed that except for the provisions of section 305 of the World War Veterans' Act, the policy lapsed with the month of April, 1919; that the veteran became permanently and totally disabled on September 5, 1922; and that in the years 1922, 1924, and 1925, the Veterans' Administration made ratings of partial disability of the veteran from the date of his discharge by reason of which he was entitled on September 5, 1922, to uncollected compensation sufficient, if it had been applied to the payment of premiums on the policy as they became due, to have kept it in force until it matured. At the conclusion of the evidence, both parties moved for a directed verdict, and the court having found that the veteran was totally and permanently disabled on September 5, 1922, while the insurance was still in effect by virtue of said section 305, a verdict and judgment were rendered in favor of the plaintiff.

Section 305 of the World War Veterans' Act (hereinafter referred to as section 305), provides as follows: "Where any person has, prior to June 7, 1924, allowed his insurance to lapse, or has canceled or reduced all or any part of such insurance, while suffering from a compensable disability for which compensation was not collected and dies or has died, or becomes or has become permanently and totally disabled and at the time of such death or permanent total disability was or

is entitled to compensation remaining uncollected, then and in that event so much of his insurance as said uncollected compensation, computed in all cases at the rate provided by section 302 of the War Risk Insurance Act as amended December 24, 1919, chapter 16, Forty-first Statutes, page 371, would purchase if applied as premiums when due, shall not be considered as lapsed, canceled or reduced; and the Veterans' Administration is hereby authorized and directed to pay to said soldier, or his beneficiaries, as the case may be, the amount of said insurance less the unpaid premiums and interest thereon at 5 per centum per annum compounded annually in installments as provided by law."

There is no dispute that the case of the plaintiff falls within the terms of this section, for prior to June 7, 1924, he had allowed his insurance to lapse and had become permanently and totally disabled, and at the time of such disability, he was entitled to compensation remaining uncollected; and the amount of such uncollected compensation was sufficient, if applied as premiums upon the insurance, to keep the policy alive until the period of disability, and to entitle the insured to the sum recovered in the judgment. The point raised by the United States is that section 305 was repealed by section 17 of the Economy Act of March 20, 1933 (hereinafter referred to as section 17), which is as follows: "All public laws granting medical or hospital treatment, domiciliary care, compensation and other allowances, pension, disability allowance, or retirement pay to veterans and the dependents of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection, and the World War, or to former members of the military or naval service for injury or disease incurred or aggravated in the line of duty in the military or naval service (except so far as they relate to persons who served prior to the Spanish-American War and to the dependents of such persons, and the retirement of officers and enlisted men of the Regular Army, Navy, Marine Corps, or Coast Guard) are hereby repealed, and all laws granting or pertaining to yearly renewable term insurance are hereby repealed, but payments in accordance with such laws shall continue to the last day of the third calendar month following the month during which this act is enacted [June 30, 1933]."

Section 305 as we have seen pertained to yearly renewable term insurance, and hence it was covered by the clause in section 17 repealing all laws granting or pertaining to yearly renewable term insurance. The important question, therefore, arises as to whether Congress had the power to repeal section 305 and thus deprive the insured of the benefits thereby conferred upon him. Light is thrown on this question by the decision of the Supreme Court in Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434. In that case, a beneficiary under a war risk insurance policy sued in April, 1933, to recover benefits under the policy alleging that while the policy was in force, the insured had become totally and permanently disabled, and that he was entitled to compensation sufficient to pay the premiums on the policy until it was matured by his death, but that no compensation whatever had been paid to him. The United States defended on the ground that the court was without jurisdiction to entertain the suit because the consent of the United States to be sued had been withdrawn by the clause in section 17 which repealed all laws granting or pertaining to yearly renewable term insurance. But the court held that policies of war risk insurance, although not entered into for gain by the United States, were legal obligations of the same dignity as other contracts of the United States and were possessed of the same legal incidents; that, being contracts, they were property and created vested rights which Congress was forbidden by the Fifth Amendment to take away without compensation, and, consequently, the statutory provision which purported to take away this contractual right was void. The narrower point made by the United States that the act was valid, at least to the extent that it was an exercise of the power of Congress to withdraw the consent of the United States to be sued upon the contract, was also overruled on the ground that the act did not manifest an intent to withdraw the remedy even if the contractual right should be held to persist. The decision, however, did not discuss the contention of the beneficiary that the policy was kept in force until the veteran's death by uncollected compensation.

It follows that if the right conferred by section 305 upon the policyholder in the instant case was in its nature a contractual right, Congress was without power to

destroy it. It is pointed out by the government that at the time when the contract was made and during the period when it was kept in force by premiums deducted from the soldier's pay, there was no statutory provision for the revival of a lapsed policy;[1] and since the terms of a statute subsequently enacted could not have been in the minds of the parties when the contract was formed and the benefits created by the statute were conferred without consideration, it is contended that they should not be regarded as part of the contract, but as the grant ·of a gratuitous privilege which Congress had the absolute right to withdraw.

We do not agree with this conclusion. The policy itself expressly provided that it was subject to further change by legislative amendment, as was shown in Lynch v. United States, 292 U.S. 571, 577, 54 S. Ct. 84U, 842, 78 L.Ed. 1434, where the court said: "In order to promote efficiency in administration and justice in the distribution of war risk insurance benefits, the administration was given power to prescribe the form of policies and to make regulations. The form prescribed provided that the policy should be subject to all amendments to the original act, to all regulations then in force or thereafter adopted. Within certain limits of application, this form was deemed authorized by the act, White v. United States, 270 U.S. 175, 180, 46 S.Ct. 274, 70 L.Ed. 530, and, as held in that case, one whose vested rights were not thereby disturbed could not complain of subsequent legislation affecting the terms of the policy. Such legislation has been frequent. Moreover, from time to time, privileges granted were voluntarily enlarged and new ones were given by the government. But no power to curtail the amount of the benefits which Congress contracted to pay was reserved to Congress; and none could be given by any regulation promulgated by the Administrator. Prior to the Economy Act, no attempt was made to lessen the obligation of the government."

The distinction is clear between the contractual rights covered by an insurance policy issued by the United States and gratuities to veterans in the military service, such as pensions, bonuses, and compensation allowances. It was referred to in Lynch v. United States, 292 U.S. 571, 576, 54 S.Ct. 840, 842, 78 L.Ed. 1434. But it does not follow that the privilege granted by Congress now under consideration is a gratuity subject to withdrawal at will, simply because it consists of the revival of a lapsed policy based upon the existence of an uncollected compensation allowance. We are in accord with the conclusions of Judge Watkins announced in an opinion in the similar case of Moragne v. United States, 16 F.Supp.˙1008, filed in the District Court of the United States for the Western District of South Carolina on March 27, 1936, where he said:

"An award of compensation is undoubtedly a gratuity but it does not follow that the reinstatement and maturity of contracts of veterans' insurance throughʹ the provisions of section 305 are a gratuity. This action by Congress has more of the elements of an act of simple justice to the veterans whose policies had been lapsed at a time when the government should have been paying them sufficient compensation to have kept the policies in force.

"The passage of section 305 constituted a modification of the insurance law rather than of the compensation law. The compensation awarded to the veteran on October 7, 1921, was due to have been paid and presumably was paid on or short-

---

[1] The first enactment permitting revival of lapsed insurance by reason of uncollected compensation was contained in section 408 of the War Risk Insurance Act, passed August 9, 1921, (42 Stat. 156). Its purpose was twofold: (1) The reinstatement of lapsed term insurance by disabled veterans whose disabilities were service-incurred providing they were not actually totally and permanently disabled; and (2) the revival of lapsed insurance where death had ensued in those cases in which the veterans had allowed their insurance to lapse while suffering from service-incurred disabilities for which compensation was uncollected and who were entitled to sufficient uncollected compensation on the date of death to defray the cost of the premiums due under the contract. By amendment of March 4, 1923, to section 408 (42 Stat. 1525) the revival features were extended to total and permanent disability cases. Then when the World War Veterans' Act was passed on June 7, 1924, 43 Stat. 607, section 408 of the War Risk Insurance Act, as amended, was reenacted in the World War Veterans' Act as sections 304 and 305, 43 Stat. 625, 626, the reinstatement features being embodied in section 304 and the provisions for revival being set forth in section 305.

ly after that date. Section 305, which was passed in 1924, did not change the compensation status. It merely provided that under certain circumstances which fit the case at bar that insurance previously considered as lapsed should be reinstated, matured and paid, less the amount of the past due premiums. The premiums, therefore, were paid and with interest by charging same against the policy.

"This modification of the insurance law is in line with the original conception of veterans' insurance."

The amendment to the policy effected by the statute under consideration was in line with the method adopted by Congress and the Bureau of War Risk Insurance from the beginning of the business. Bulletin No. 1, promulgated by the Director of War Risk Insurance on October 15, 1917, under the authority of section 402 of the War Risk Insurance Act of October 6, 1917, 40 Stat. 409, provided in the form of policy adopted not only that the insurance should be subject in all respects to the provisions of that act and any amendments thereto, but also that the premiums be paid monthly, and unless the insured should otherwise direct, should be deducted from any pay due him for military service so that a premium should be treated as paid when due, if upon the due date the United States should owe the policyholder a sufficient amount of pay to provide for the premium. It is clear that section 305 may be regarded as an amendment of the insurance contract with respect to the same matter, since it permits the revival of a policy lapsed for non payment of premiums whenever at the time of death or total permanent disability, the insured was entitled to uncollected compensation sufficient to cover the premiums, and authorizes the Veterans' Administration to deduct the amount of the unpaid premiums with interest thereon from the amount of the insurance to be paid to the veteran.

That the subject-matter under discussion is an insurance contract rather than a matter of compensation allowance is emphasized by the decisions of this and other circuits which have uniformly held, contrary to the government's contention, that the District Courts have jurisdiction of controversies arising under section 305 because they come within the purview of section 19 of the World War Veterans' Act, as amended, 38 U.S.C.A. § 445, which limits the jurisdiction of District Courts to those cases in which there is a disagreement "as to claim * * * under a contract of insurance." In United States v. Ellison (C.C.A.) 74 F.(2d) 864, 868, this court said:

"We see nothing either in the contention that the court is without jurisdiction because the action is on a policy reinstated under the statute upon an award of disability compensation, or that the court is bound by the finding of the Bureau on the question of total and permanent disability. Jurisdiction has been conferred upon the courts to hear and determine all claims arising under these war risk insurance policies where there has been a disagreement between the claimant and the Bureau. 38 U.S.C.A. § 445. And, while the finding of the Bureau as to the right of an insured to compensation on account of disability is binding upon the courts (Silberschein v. U. S., 266 U.S. 221, 225, 45 S.Ct. 69, 69 L.Ed. 256; Crawford v. U. S. [C.C.A.2d] 40 F.(2d) 199), the effect of such finding upon the reinstatement of the policy is a matter for the courts to determine, as is also the question as to whether the insured was or was not at that time dead or totally and permanently disabled (U. S. v. Knott [C.C.A. 6th] 69 F.(2d) 907; U. S. v. Hendrickson [C.C.A.10th] 53 F.(2d) 797, 799, 800; U. S. v. Vance [C.C.A.8th] 48 F.(2d) 472; U. S. v. Crowell [C.C.A.8th] 48 F.(2d) 475; Sprencel v. U. S. [C.C.A.5th] 47 F. (2d) 501; Hollrich v. U. S. [D.C.] 40 F. (2d) 739; Hegg v. U. S. [D.C.] 21 F. (2d) 622; 35 Opinions of Atty. Gen. 241). As was said by Judge McDermott, speaking for the Circuit Court of Appeals of the Tenth Circuit in the Hendrickson Case, supra:

" 'The appellee here is not asking for compensation; he is seeking an adjudication of his rights under his insurance contract. Section 305 provides that his policy does not lapse if he "becomes or has become permanently and totally disabled" while he has enough uncollected compensation to pay his premiums. Whether he has "uncollected compensation" depends solely upon the rating of the bureau and the fact of its nonpayment; but whether, during that period of the government's delinquency, he becomes permanently and totally disabled is a question of fact for the courts to determine. The bureau determines the fact of disability for purposes

of compensation; the courts determine it for purposes of insurance. This distinction runs all through veterans' relief legislation, and section 305 deals with the rights of a veteran under his insurance policy, and not with his right to collect compensation. * * * Nor is there any reason why this court should eliminate from the comprehensive jurisdiction conferred by section 19, those cases where the plaintiff meets the defense of lapsation by a reliance upon section 305.'"

See United States v. Sellers (C.C.A.) 75 F.(2d) 623.

Affirmed.