## McCLURE v. UNITED STATES.
### No. 8596.

Circuit Court of Appeals, Ninth Circuit.
March 28, 1938.

Graham K. Betts, of Seattle, Wash., and Alan G. Paine and Post, Russell, Davis & Paine, all of Spokane, Wash., for appellant.

James M. Simpson, U. S. Atty., and S. R. Clegg, Asst. U. S. Atty., both of Spokane, Wash., and Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., and Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Newman A. Townsend, Sp. Atty., and Keith L. Seegmiller, Atty., Department of Justice, both

of Washington, D. C., and George R. Stuntz, Atty., Department of Justice, of Seattle, Wash.

Before WILBUR, DENMAN, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

This action was brought by John F. McClure, who claimed that he had become totally and permanently disabled and was entitled to recover upon his war risk insurance. Subsequently he died, and the action was continued by his widow as administratrix of his estate, and individually. The action is predicated upon section 305 of the World War Veterans' Act of 1924, 43 Stat. 607, 626, as amended, 38 U.S.C.A. § 516.

The case was tried without a jury and the trial court made its findings of fact which brought the case squarely within the provisions of section 305, supra. The trial court found that the deceased enlisted December 14, 1917, and was discharged January 29, 1919; that he applied for and was granted a policy of war risk term insurance in the sum of $10,000 and paid premiums thereon to and including January 1919; that he became permanently and totally disabled on December 1, 1929, and had not been permanently or totally disabled at any time previous to that date; that on the date the deceased permitted his policy of insurance to lapse for failure to pay the premium in 1919 he was suffering from a compensable disability for which there was then due and uncollected compensation; that on the date of total permanent disability there was due and uncollected compensation in an amount sufficient to pay all premiums due upon said policy had the same been applied in payment thereof since the date the insurance lapsed and that said compensation still remains uncollected by reason of the provisions of section 210 of the World War Veterans' Act as amended, 38 U.S.C.A. § 499, the deceased having first made claim for such compensation on the 15th day of April 1929; that the deceased left surviving him his widow and two children. The court concluded as a matter of law that the plaintiff was not entitled to recover because under the provisions of section 301 of the World War Veterans' Act, as amended, 38 U.S.C.A. § 512, the policy sued upon ceased and terminated July 2, 1927.

Although the facts found by the trial court brought the case clearly within the provisions of section 305, supra, 38 U.S.C.A. § 516, it is claimed by the government that section 301 of the World War Veterans' Act of 1924, as amended, prohibits the application of section 305 to yearly renewable term insurance where the loss occurred after July 2, 1927, because, as that section (section 301) was amended June 2, 1926, 44 Stat. 686, it provided that yearly term insurance should cease July 2, 1927. The effect of this interpretation of these two sections (301, 305) would be that, if a veteran died or became totally and permanently disabled after the enactment of the World War Veterans' Act of 1924, and before July 2, 1927, he would be entitled to recover under the conditions set forth in section 305, but, if death or permanent disability occurred thereafter, neither he nor his beneficiaries could recover because of the provisions of the statute, section 301, declaring that yearly renewable term insurance should cease on July 2, 1927. The government claims that its view is supported by the practice of the Veterans' Bureau and by the decision of the Circuit Court of Appeals of the Tenth Circuit in Skelton v. U. S., 88 F. 2d 599, upon rehearing. Before considering these matters we will examine the statutes involved and their legislative history.

The provisions found in section 305 of the act of 1924 are predicated upon a somewhat similar provision of section 408 added to the War Risk Insurance Act of 1921, 42 Stat. 147, 156, by the third proviso of that section. It applied only to compensation for "wounds or disease suffered or contracted in line of service" and was retroactive in favor of those who had died "from said wounds or disease." The act of 1924 repealed the War Risk Insurance Act as amended. 43 Stat. 629, § 601. The repealing act provided that "the sections of this codification herein applicable thereto shall be in force in lieu thereof, subject to the limitations contained in this title," section 601; and in section 602, 38 U.S.C.A. § 571 note, that the "repeal of the several acts as provided in sections 600 and 601 hereof shall not affect any act done or any right or liability accrued, * * * but all such rights and liabilities under said Act shall continue and may be enforced in the same manner as if said repeal had not been made."

Section 305 of the World War Veterans' Act of 1924 set out in the footnote [1] limited the right to collect insurance which had lapsed to those cases: (1) Where the person at the time of the lapse was suffering from a compensable disability; (2) for which compensation was not collected; (3) dies or has died or becomes or has become permanently and totally disabled; and (4) at the time of such total and permanent and total disability was or is entitled to compensation remaining uncollected; (5) the amount of recovery to be limited to the amount which such uncollected compensation would purchase "if applied as premiums when due."

It is clear that section 305 as enacted June 7, 1924, supra, applied to the holders of yearly term insurance which had lapsed prior to the passage of the act under the circumstances and conditions described in the section. Section 301 of the same act, 38 U.S.C.A. § 512, was directed to the problem of converting yearly term insurance to other forms of insurance provided by law and regulation. It provided that "not later than July 2, 1926, all term insurance held by persons who were in the military service after April 6, 1917, shall be converted, without medical examination, in such form or forms of insurance as may be prescribed by regulation and as the insured may request." It also provided that all term insurance shall cease on July 2, 1926, except when death or total permanent disability shall have occurred before July 2, 1926. It further provided that, where yearly renewable term insurance had matured by reason of total permanent disability and the disability had ceased, the insured be given an additional period of two years from the date on which he is required to renew payment of premiums, in which to convert his term insurance.

The government insists that the express provisions for the extension of yearly term insurance contained in section 301 prevent the engrafting upon the provisions of section 301 of another exception based upon section 305. This contention cannot be maintained. Sections 301 and 305 are parts of the same statute enacted at the same time and must be construed together. The numbering of sections is wholly immaterial to their proper interpretation. The subdivision of the act into sections is purely a matter of convenience. Section 305 is just as much a part of the legislation in section 301 as though it had been added to section 301 as a paragraph thereof.

A basic fallacy in the contention that section 305 is limited by section 301 providing that yearly term insurance shall cease July 2, 1926, is the implied contention that section 305 makes provision for extending yearly term insurance beyond July 2, 1926. Section 305 does not so provide. It deals with the specified case above outlined. It does not extend or renew insurance with the correlative rights of insurer and insured. It exacts no promise, express or implied, for the payment of premiums. It does not permit such payment by the veteran. It provides for the payment of a gratuity in the form of insurance to the veteran, or to his beneficiaries (limited July 2, 1926, 44 Stat. 799, 38 U.S.C.A. § 516, to widow, child or children, or dependent father or mother).[2] The amount was to be ascertained by the fiction of treating such uncollected compensation as though it had been actually paid to the veteran by the government and by him repaid to the government as premiums which would have been due upon his lapsed insurance if it had not lapsed. This legislation recognized that the ascertainment of the amount of compensation allowable under

---

[1] "Sec. 305. Where any person has heretofore allowed his insurance to lapse while suffering from a compensable disability for which compensation was not collected and dies or has died, or becomes or has become permanently and totally disabled and at the time of such death or permanent total disability was or is entitled to compensation remaining uncollected, then and in that event so much of his insurance as said uncollected compensation, computed in all cases at the rate provided by section 302 of the War Risk Insurance Act as amended December 24, 1919, would purchase if applied as premiums when due, shall not be considered as lapsed; and the United States Veterans' Bureau is hereby authorized and directed to pay to said soldier, or his beneficiaries as the case may be the amount of said insurance less the unpaid premiums and interest thereon at 5 per centum per annum compounded annually in installments as provided by law."

[2] Compare Skelton v. U. S., 10 Cir., 88 F.2d 599, 601; U.S. v. Weaver, 4 Cir., 86 F.2d 372, 373; Lynch v. U. S., 292 U. S. 571, 577, 54 S.Ct. 840, 842, 78 L.Ed. 1434.

the law was a fact difficult of ascertainment; that the factual decision might be long delayed; and that it was subject to revision even then. If at any time prior to his death or permanent total disability he collects his compensation, neither he nor his beneficiaries can claim payment of the gratuity. That he is not permitted to pay any premium is a clear indication that the yearly term insurance is not continued in force under section 305.

Section 305, supra, limits the application of his unpaid compensation to the lapsed policy. It does not authorize the veteran to convert his policy before July 2, 1927, when the yearly term insurance ceases and to thereafter apply the amount of uncollected compensation to premiums upon some converted form of insurance, but specifically provides for the application of the uncollected compensation to the premiums which were due under the terms of the lapsed policy and not under the terms of the converted policy.

Furthermore when the War Risk Insurance Act was passed, Congress contemplated the termination of all yearly renewable term war risk insurance within five years. The enactment of section 301, supra, in 1924, carried out this purpose, but the earlier acts provided for the voluntary conversion of yearly term insurance so that when the World War Veterans Act of 1924 was adopted several types of war risk insurance were outstanding.[3] There is no relation between this purpose to terminate yearly renewable term insurance and the purpose sought to be accomplished by section 305 of the War Risk Insurance Act of 1924 which codified and modified the proviso in section 408 of the War Risk Insurance Act of 1921, 42 Stat. 156, supra. The purpose of section 305, supra, was to make an allowance to a totally and permanently disabled veteran or in case of his death, to his family, in the special circumstances therein set out. There is no inherent reason why this benefaction should be extended to those disabled veterans holding other forms of war risk insurance and denied to others similarly situated whose policies had lapsed before conversion to such forms. The moral obligation of the government in each case is the same, and the purpose of Congress to discharge that moral obligation is not confined by the terms of the statute, section 305, to any particular form of insurance. The broad beneficent purposes of Congress, expressed in section 305, are both in terms and spirit applicable to any type of insurance which has lapsed and thus been lost to the veteran. There is no reason to believe, at least none occurs to us, and none has been suggested, that the congressional purpose to terminate a particular form of insurance (the yearly renewable term insurance) conflicts either in spirit, letter, or intent with the avowed purpose of extending relief to a veteran whose insurance had lapsed and thus ceased at a time when the government, in pursuance of its beneficent policy to make compensation to veterans suffering disability, itself should have supplied the means for preventing the lapse, and for continuing the policy in force until the loss occurred and failed to do so because of delay in making the award of such compensation.

We see no inconsistency between section 301 which provides that all term insurance shall cease on a certain date (July 2, 1926) and another provision, section 305, that, where such insurance has already ceased because it has lapsed, the former holder of the policy in the event of total permanent disability, or his beneficiaries in case of his death, may recover all or part of the amount of the policy, as the case may be, because the government deems itself under moral obligation to thus take care of such a situation.

If it be considered that there is a conflict between the general provision of section 301 that the yearly term insurance shall cease July 2, 1926, and the special provision of section 305 for the payment to the insured or to his beneficiaries under the special circumstances therein set forth,

3 The Annual Report of the Veterans Administration for the year 1924 (page 427) shows that,

| | |
|---|---|
| At the close of the fiscal year there were 562,600 government life insurance policies in force, amounting to | $2,984,573,458. |
| Of this number 353,215 were on the converted plan, aggregating | 1,375,542,924. |
| 209,385 were on the term plan, aggregating, | 1,609,030,534. |
| An average of 3,500 new converted policies were being issued each month to World War Veterans, aggregating | 15,000,000. |

the special terms of the statute should control, against its general declaration that yearly term insurance should cease on a certain date. This view is sustained by the familiar rule of statutory construction stated by the Supreme Court in Townsend v. Little, 109 U.S. 504, 512, 3 S.Ct. 357, 362, 27 L.Ed. 1012, as follows: "According to the well-settled rule, that general and specific provisions, in apparent contradiction, whether in the same or different statutes, and without regard to priority of enactment, may subsist together, the specific qualifying and supplying exceptions to the general, this provision for the execution of a particular class of deeds is not controlled by the law of the territory requiring deeds generally to be executed with two witnesses. [citing] Pease v. Whitney, 5 Mass. 380; Nichols v. Bertram, 3 Pick. [Mass.] 342; State ex rel. Fosdick v. Perrysburg, 14 Ohio St. 472; London, etc., Railway v. Wandsworth Board of Works, L.R. 8 C.P. 185; Bish.Writ. Laws, § 112a."

We have first dealt with these two sections as they appeared in the World War Veterans' Act of 1924, because in subsequent legislation amending them they parted company. We will now consider such subsequent legislation.

On March 4, 1925, section 301 of the World War Veterans' Act of 1924, was amended together with many other sections of the act. The amending act provides:

"Sec. 13. Section 301 of the World War Veterans' Act, 1924, approved June 7, 1924, is hereby amended to read as follows:" Then follows a re-enactment of the entire section with minor changes and the provision that "this section shall be deemed to be in effect as of June 7, 1924." So far as the question here under consideration is concerned there is no change in the terms of the section. 43 Stat. 1302, 1309. The section was again amended June 2, 1926, 44 Stat. 686. The entire section was re-enacted in amended form. It is substantially the same so far as matters involved herein are concerned, except that the date for the termination of yearly term insurance was changed to July 2, 1927. There is, however, a change in

phraseology of the statute with regard to the date. Instead of providing as in the original act and in the amendment of 1925 above referred to that "not later than July 2, 1926, all term insurance * * * shall be converted" and that "all term insurance shall cease on July 2, 1926," etc., the statute provided: Section 301. "Except as provided in the second paragraph of this section, not later than July 2, 1927, all term yearly renewable insurance * * * shall be converted," etc. The second paragraph thus referred to is set out below.[4]

The Sixty-Ninth Congress amended section 301 of the World War Veterans' Act of 1924 on June 2, 1926, and by a separate and later statute amended section 305, thus making section 305 the later expression of the legislative purpose, 44 Stat. 799. The statute amending section 301 re-enacted the entire section, as amended, and again provided that "this section shall be deemed to be in effect June 7, 1924." It contained the same language with reference to the conversion and termination of the yearly renewable term insurance July 2, 1927, that was contained in the section as amended in 1924, 43 Stat. 1309, supra.

On May 29, 1928, an act was passed to amend the World War Veterans' Act, 45 Stat. 964. Among other sections amended by this act were section 301, 45 Stat. 968, and section 305, 45 Stat. 971. So far as the conversion and termination of yearly renewable term insurance is concerned, the amendment of section 301 was identical with the provisions contained in the amendments of 1925 and 1926, supra. The amendment of section 301 again provided: "This section, as amended, shall be deemed to be in effect as of June 7, 1924." Section 305 was amended by adding a proviso that compensation should be deemed uncollected although uncollectible under previous statutes.

In determining the effect of these amendments to sections 301 and 305 of the act of 1924, it should be borne in mind that where a statute is amended and the amendment re-enacts portions of the statute the portion so re-enacted should be deemed to be effective from the time of its first adoption. In re Fuetl, D.C., 247

---

[4] "All yearly renewable term insurance shall cease on July 2, 1927, except when death or total permanent disability shall have occurred before July 2, 1927: Provided, however, That the director may by regulation extend the time for the continuing of yearly renewable term insurance and the conversion thereof in any case where on July 2, 1927, conversion of such yearly renewable term insurance is impracticable or impossible due to the mental condition or disappearance of the insured." 38 U.S.C.A. § 512.

750

F. 829; Mott Store Co. v. St. Louis, etc., R. Co., 173 Mo.App. 189, 158 S.W. 108; People v. W. A. Wiebolt & Co., 357 Ill. 208, 191 N.E. 689, 93 A.L.R. 789; Barrows v. People's Gaslight & Coke Co., C.C., 75 F. 794.

The rule is stated in 59 Corpus Juris, p. 1097, § 647: "Where an amendment leaves certain portions of the original act unchanged, such portions are continued in force with the same meaning and effect they had before amendment, so where an amendatory act provides that an existing statute shall be amended to read as recited in the amendatory act such portions of the existing law as are retained either literally or substantially, are regarded as a continuation of the existing law and not as a new enactment."

■ Consequently, in determining the effect of the acts amending sections 301 and 305, we are not necessarily concerned with the question as to which of the two is the later, even if we assume, as it is contended by the government we should, that there is a conflict between the two statutes. As already pointed out, the advantage of being a later amendment shifted to section 301 in 1925; it changed to section 305 in 1926 but still later (1928) both sections were amended by the same act, one by re-enactment and the other by an added proviso.

We are concerned here with the act of 1924, as amended by acts to which we have directed attention affecting the two sections whose interpretation is now under consideration. The rule of statutory construction applicable to such a situation is stated by the Supreme Court in Blair v. Chicago, 201 U.S. 400, 475, 26 S.Ct. 427, 446, 50 L.Ed. 801, as follows:

■ "The rule was thus stated in Farrell v. State, 54 N.J.Law, 421, 24 A. 725: 'As a rule of construction, a statute amended is to be understood in the same sense exactly as if it had read from the beginning as it does amended. Parsons v. Circuit Judge, 37 Mich. 287. In Conrad v. Nall, 24 Mich. 275, a section in the chapter of the Code was amended, and it was held that it was not intended to operate independently of the other provisions of the chapter, but that the whole chapter, in its present form, must be read as one act. The rule is correctly stated in Endlich on Statutes, § 294, as follows: "A statute which is amended is thereafter, and as to all acts subsequently done, to be construed

as if the amendment had always been there, and the amendment itself so thoroughly becomes a part of the original statute that it must be construed in view of the original statute as it stands after the amendments are introduced and the matters superseded by the amendments eliminated." ' "

■ We must apply this rule in our consideration of the interpretation of the World War Veterans' Act of 1924, with its amended sections 301 and 305. We find no inconsistency between the requirement for the termination by conversion or otherwise of all yearly renewable term insurance, section 301, and the provisions of section 305 that where such insurance had already lapsed there might be recovery where, at the time a total loss is suffered by the veteran or his widow, child, children, or dependant father or mother, there remained uncollectible and uncollected compensation due him for injuries or illness existing from the date of lapse until the loss. Assuming, however, that there is an inconsistency between the two sections (301 and 305) literally construed, the special provisions of section 305 must control the general one of section 301. (see authorities supra) There is another rule of statutory construction applicable in case of doubt which supports the same conclusion, that is, that the War Risk Insurance Act, 40 Stat. 398, as amended, should be liberally construed in favor of the insured. U. S. v. Cox, 5 Cir., 24 F.2d 944; U. S. v. Sligh, 9 Cir., 31 F.2d 735; U. S. v. Le Page, 1 Cir., 59 F.2d 165; U. S. v. Law, 9 Cir., 299 F. 61.

■ The government invokes another rule of statutory construction which is given great weight in cases of doubt, namely, that administrative interpretation may solve the doubt in favor of the administrative interpretation. The government counsel correctly states the rule that where the provisions of a statute are not open to doubt the plain words of the statute must be followed, but that, "if upon the face of the statute itself, doubt as to Congressional intent is found to exist, resort to legislative history and administrative interpretation, [is] permissible under such circumstances." We have expressed the view that the interpretation of the statute is clear on its face. It follows that the administrative construction is not decisive. To establish administrative practice the government relies upon a communica-

tion from the director of the United States Veterans' Bureau to Congress, March 10, 1926, while the proposed amendments to sections 301 and 305 of the World War Veterans' Act were pending in Congress, wherein he states the cost of the proposed amendments "assuming that section 305 under the present law is not effective subsequent to July 2, 1926." This communication, however, was not incorporated in the report of the committee. Indeed, the omission of such a statement in the report of the committee (H.R. 1217, 69th Congress to accompany H.R. 12175, 44 Stat. 790) is significant. The director of the Veterans' Bureau is said to have testified May 24, 1926, before the Senate Committee having in charge the proposed legislation amending sections 301, 305, and in the course of such testimony the director assumed that section 305 "will not be effective under this provision for cases dying or becoming permanent total subsequent to July 2, 1927."

■ These statements of the Director of the Bureau in his letter and in his testimony cannot properly be considered by us in arriving at the correct construction of the congressional enactment. They were not incorporated in the report of the committee and do not purport to state an administrative practice. The government also relies upon a letter of February 23, 1928, from the general counsel to the director reporting on the case of one Morris Cherniabsky which is marked approved F.H.T. Director, February 27, 1928, wherein it was held that "Sec. 305 cannot be applied to prevent the lapse of term insurance where there was neither death nor total permanent disability before July 7, 1927."

We are asked to assume that from that time forward the department acted upon this opinion of the general counsel and rejected claims for compensation under section 305 which matured after July 2, 1927.

■ The government also relies upon the rule that where an administrative interpretation of the statute exists at the time of the amendment of the statute it will be presumed that the Congress had knowledge of the administrative interpretation, and if Congress re-enacts the statute in the same terms it is presumed to have intended to adopt the administrative interpretation. National Lead Co. v. U. S., 252 U.S. 140, 40 S.Ct. 237, 64 L.Ed. 496;

McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 492, 51 S.Ct. 510, 512, 75 L.Ed. 1183; Old Colony R. Co. v. Com'r, 284 U.S. 552, 557, 52 S.Ct. 211, 212, 76 L.Ed. 484; Johnson v. Manhattan Ry. Co., 289 U.S. 479, 501, 53 S.Ct. 721, 729, 77 L.Ed. 1331.

In the application of this rule the appellee points to the amendment of 1928 to section 305, 45 Stat. 971, adding the proviso to section 305 above mentioned. It is difficult, however, to apply the rule invoked by the government to congressional action on this bill, for the opinion of the general counsel is based upon an interpretation of three sections of the statute, sections 301, 304 and 305, 38 U.S.C.A. §§ 512, 515, 516, and was apparently rendered while the act of 1928 was before the Legislature and shortly before it was enacted. Such an opinion so rendered does not come within the rule announced by the Supreme Court in National Lead Co. v. U. S., 252 U.S. 140, 40 S.Ct. 237, 64 L.Ed. 496, which dealt with a long-continued practice (24 years) with several re-enactments (4) of the statute, or Johnson v. Manhattan Ry. Co., 289 U.S. 479, 53 S.Ct. 721, 729, 77 L.Ed. 1331, which dealt with the re-enactment by Congress of a section which had been construed and acted upon for several years and where the court said: "In such circumstances, as this court often has pointed out, re-enactment operates as implied legislative approval of the prior construction—in other words, as a re-enactment of the statute as before construed."

The Circuit Court of Appeals for the Tenth Circuit, in an opinion by Judge McDermott, sustained the claim of the veteran under section 305, supra, but later granted a rehearing, and, relying upon the rules of statutory construction applicable in case of doubt concerning the weight of administrative practice, it resolved that doubt in favor of the government. Skelton v. U. S., 88 F.2d 599, supra.

Our decision is predicated upon the ground that the statute is too clear to justify the use of such an aid, particularly where the administrative practice is not clearly established or long continued. The importance of the question involved and the disagreement we have expressed with the decision of the Tenth Circuit will no doubt require consideration of the question by the Supreme Court. We might submit the matter to that court by an appropriately framed question before render-

ing our decision, but we have decided in the interest of expedition to rule upon the case in the first instance.

We have not considered the effect of the Economy Act, 38 U.S.C.A. § 701 et seq., or of subsequent statutes modifying that act referred to in Lynch v. U. S., 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434, because of the concession of the government in open court in the course of the argument that if section 305 was not modified or repealed as to yearly renewable term insurance the appellant is entitled to judgment.

Reversed.