## GOLDEN v. UNITED STATES (MAY-BERRY, Third-Party Defendant).

### No. 196–E.

United States District Court
M. D. Alabama, E. D.
Aug. 11, 1950.

O. P. Lee, Carl Maye, Opelika, Ala., for plaintiff.

E. Burns Parker, U. S. Atty., Thomas M. Stowers, Asst. U. S. Atty., Montgomery, Ala., for U. S.

Jacob A. Walker & Walker & Walker, Opelika, Ala., for defendant Mayberry.

KENNAMER, District Judge.

Plaintiff herein seeks recovery on a policy of national service life insurance taken out by Henry Grady Mayberry, her deceased son, who was killed while a member of the armed forces of the United States of America during World War II.

In July, 1941, Henry Grady Mayberry, applied for, and received, effective August 1, 1941, national service life insurance,

designating the defendant Charlie Blalock Mayberry, as his beneficiary, and stating the relationship as that of "guardian."

Henry Grady Mayberry died in November, 1943, while in the military service of the United States of America, and while the insurance contract was in full force and effect.

The defendant Charlie Blalock Mayberry was advised by the Veterans' Administration in 1945 that he was entitled to the insurance benefits under said policy in the sum of $9,846.00, being the amount of insurance for which premiums had been fully paid by the insured at his death, by virtue of the fact that this defendant had stood in loco parentis to the insured for a period of not less than one year prior to his entry into active service, and was therefore within the permitted class of beneficiaries of said policy under the law in existence at that time.

In pursuance to this determination by the Veterans' Administration this defendant, as the designated beneficiary, was paid monthly installments of insurance at the rate of $53.07 per month until a total of $4,404.81 has been paid to him by the United States of America under the policy.

As the designation of "guardian" was ineffective under the Act, 38 U.S.C.A. § 801 et seq., the sole question before this court is whether the defendant Charlie Blalock Mayberry, the designated beneficiary in this policy, can qualify as one standing in loco parentis under the Act, the Act providing that the term "parent" includes persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year.

### Findings of Fact.

1. Henry Grady Mayberry, named in the national service life insurance policy as Grady Henry Mayberry, was born December 31, 1922 to Guy and Miriam Mayberry, who, though poor and without much formal education, supported their children to the best of their ability as tenant farmers until the father died in September, 1938, leaving the mother and four children, Henry Grady being one of the four.

2. Within about nine months after the father Guy Mayberry died, and when Henry Grady was about sixteen and a half years of age, an estrangement developed between Henry Grady and his mother over her contemplated marriage to one of his boy friends, the boy friend being about the same age as Henry Grady, and his mother being some eighteen years their senior. When this marriage was consummated, over his objections and to his disgust, Henry Grady left the home of his mother with stated intentions never to return.

3. Prior to the death of his father Guy Mayberry, Henry Grady, although irregular in his attendance at school, always passed his school work and was duly promoted, this being due to his exceptional ability, and for several years his teachers had commented on his ability with statements that he would go places if given the right opportunities and encouragement. After the death of Guy Mayberry, the Principal of the High School at Waverly, where Henry Grady was a student, went to the defendant Charlie Blalock Mayberry and suggested to him that it would be a fine act on his part if he would take Henry Grady into his home and raise him and give him the opportunities he so badly needed; the daughter of Charlie Blalock Mayberry, an only child, having married on June 24, 1939 and gone to another town to make her home.

4. After Henry Grady left the home of his mother in June, 1939, with apparent intentions never to return, and on July 3, 1939, the defendant Charlie Blalock Mayberry, with his wife and another lady, having previously decided to take Henry Grady into his home and rear him, went to the home of the plaintiff, the mother, and talked with her about his taking Henry Grady into his home and rearing him as his boy. Having conversed with the mother about this matter, Charlie Blalock Mayberry, his wife, and the other lady, left the home of the plaintiff and went in search of Henry Grady. They found him in the town of Shawmut at the home of a great Uncle.

5. When the matter was discussed with Henry Grady and the great Uncle about Henry Grady going to live with the Charlie

Blalock Mayberry's the idea met with the approval of both, and Henry Grady, with no other personal effects than the clothes he was wearing, voluntarily entered the car to go to Waverly to the home offered him. On the way to Waverly, they stopped in Opelika and Charlie Blalock Mayberry bought socks, underwear, pajamas, pants, and shirts, for Henry Grady Mayberry, all of which was paid for by Charlie Blalock Mayberry.

6. Charlie Blalock Mayberry was a double second cousin to Henry Grady Mayberry, being a first cousin to the plaintiff Miriam Golden, and a first cousin to Guy Mayberry.

7. When Henry Grady Mayberry entered the home of Charlie Blalock Mayberry on July 3, 1939, he knew no other home from that day until he entered the United States Navy in April, 1941. Henry Grady Mayberry was treated and regarded by Charlie Blalock Mayberry and his wife with the same warmth of parental interest a natural father and mother would have shown their own child. He was treated with every consideration, attention, interest, and affection as though he had been their very own. He had a room to himself in the home, and he was visited in the home by his friends and schoolmates. He did no work around the home other than the ordinary chores an average boy in a normal home is called upon to do. The school at Waverly had become an unaccredited high school so the boy was sent to high school at Auburn by Charlie Blalock Mayberry, and he was punctual and regular in his attendance and received his diploma just before he was inducted into the Navy in April, 1941. Charlie Blalock Mayberry bought him skates, bicycles, and other toys during his stay of a year and nine months in the Mayberry home.

8. From the day that Henry Grady entered the Charlie Blalock Mayberry home until he became a member of the armed forces of the United States, he never returned to the home of his mother, unless, and the testimony is here in dispute, he returned on Christmas day to bring some dolls for his sisters, as gifts.

9. From the day that he entered the Charlie Blalock Mayberry home in July, 1939, until he entered the armed forces, all his clothing, medical supplies and attention, school supplies, shoes, food, spending money, except a small amount of money he earned selling newspapers, was furnished to him by Charlie Blalock Mayberry.

10. After he became a member of the United States Navy in April, 1941, and until his death in November, 1943, Henry Grady corresponded quite frequently with Charlie Blalock Mayberry, his wife and daughter, giving them accounts of his whereabouts and his personal doings, but, according to her own testimony, never once during this period of time did Henry Grady write to his mother, which, though lamentable to the point of being tragic, is indicative of the resentment he continued to harbor toward her marriage to this young boy, and of the love and affection he had for Charlie Blalock Mayberry, his wife and daughter. During this time he sent pictures of himself in uniform to Charlie Blalock Mayberry, but none to his mother. He sent a pillow slip to Mrs. Charlie Blalock Mayberry with a beautiful tribute to mother printed on it.

11. Insistence is made by the plaintiff that the arrangement whereby Henry Grady would go live in the Charlie Blalock Mayberry home was a business proposition, mutually beneficial to both Henry Grady and Charlie Blalock Mayberry, the daughter of Charlie Blalock Mayberry having married and left home and Charlie Blalock Mayberry therefore needed someone to live in the home with his aged father while he was away from home on business, he being a travelling representative of a large national business concern and his wife going with him on many of his trips which carried him into several southern States. However, the daughter and her husband came back into the home to live the following October, 1939, and Henry Grady continued to live in the home until April, 1941. If the arrangement began as a business proposition, it would have been no longer advantageous to Charlie Blalock Mayberry to have continued the arrangement after

the daughter and son-in-law moved back into the home the following October.

12. Charlie Blalock Mayberry is not a wealthy man, but during the period from July, 1939 until April, 1941, he sought the advice of his lawyer about legally adopting Henry Grady Mayberry as his son but was advised by his lawyer that a great deal of red tape would be involved, and would require at least a year, so he never pursued the matter further.

13. Henry Grady Mayberry, the deceased veteran, procured this policy of national service life insurance; it was his money which paid for the premiums on the insurance policy; it was his life which was to be the consideration for paying the benefits accruing under the policy. The intentions of Henry Grady Mayberry should be carried out, none other.

14. From July 3, 1939, until April, 1941, Charlie Blalock Mayberry stood in loco parentis to the deceased Henry Grady Mayberry.

## Conclusions of Law.

1. This court has jurisdiction to hear and determine the issues involved and the parties are properly before the court.

2. The term "parent" in Section 801(f) of Title 38 U.S.C.A., includes persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year. Jadin v. U. S. et al., D.C., 74 F.Supp. 589.

3. The statute authorizing national life insurance should be liberally construed, in favor of the insured, and to carry out his intentions McClure v. U. S., 9 Cir., 95 F.2d 744.

4. From July 3, 1939, until April, 1941, Charlie Blalock Mayberry stood in loco parentis to Henry Grady Mayberry, and as such was in the permitted class of persons entitled to be named as beneficiaries in Section 801(f) of Title 38 U.S.C.A., Zazove v. U. S., 7 Cir., 156 F.2d 24.

5. In making a liberal construction of the statute authorizing national life insurance so as to carry out the intentions of the insured, the court takes judicial knowledge that the statute now provides that the insured may designate whom he pleases as the beneficiary without statutory limitations. Title 38, § 802(g), U.S.C.A.

6. The law firm of Walker & Walker, Opelika, Alabama, the attorneys for the defendant Charlie Blalock Mayberry in this litigation, are entitled to ten percent of the remaining unpaid balance of $5,444.-19, as attorneys' fee.

## Opinion of the Court.

If this court had the power to turn back the pages of time to that day when Henry Grady Mayberry was in the act of designating a beneficiary of this insurance, this court would have said: "Son, remember your natural mother. The mother who went down into the valley of the shadow of death to bring you into this world; the mother who kept a sleepless vigil at your bedside night and day when you were a sick child and rejoiced when you were well. The mother who cleansed your naked body, made your bed, mended your garments, washed and ironed your shirts, and by the sweat of her brow toiled to feed and clothe you until you were sixteen years of age, all without hope of reward but because you were flesh of her flesh and bone of her bone. Forget your grievances, son, forgive her mistakes, help if you can, to lift from her weary and tired back the strain and burdens which have been hers during all the years of her life. Name her the beneficiary of your insurance." But this court has not that power, and Henry Grady Mayberry saw fit to name another on that occasion as the beneficiary of his insurance. Whether or not he should have done so is not the issue now before this court.

It is the opinion of the court, after giving due consideration to all the testimony and evidence presented by the respective parties, that the defendant Charlie Blalock Mayberry stood in loco parentis to the deceased Henry Grady Mayberry for a period of more than one year prior to the entry of Henry Grady Mayberry into the military forces of the United States of America, as required by statute, and is therefore within the permitted class of beneficiaries to receive the benefits which accrued under the

policy of national service life insurance in full force and effect on the life of Henry Grady Mayberry at the time of his death while a member of the armed forces in November, 1943, and it is so ordered, adjudged, and decreed.

The attorneys will prepare and present to the court a proper judgment in keeping with the above findings, conclusions, and opinion.